## First National Bank *v.* New Castle, Appellant.

*Municipalities—City treasurer—Implied contract—Lending money to treasurer.*

When a city treasurer, without the knowledge, consent or approval of the municipality, borrows money from a bank, though the same is placed to his official credit in an account kept by him with the bank, the city is under no liability to repay the same, and this is especially true when at the time the city treasurer borrows he is a defaulter.

Argued Oct. 12, 1908. Appeal, No. 2, Oct. T., 1908, by defendant, from judgment of C. P. Lawrence Co., March T., 1901, No. 82, on verdict for plaintiff in suit of First National Bank of New Castle v. City of New Castle. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Assumpsit for money had and received. Before WILLIAMS, P. J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $7,657.45. Defendant appealed.

*Error assigned* among others was in refusing binding instructions for defendant.

*James A. Gardner*, city solicitor, and *Robert K. Aiken*, for appellant.—As a city, defendant cannot contract any debt or incur any liability, except in pursuance of an appropriation

previously made therefor by the municipal government: Const. of Penna., art. XV, sec. 2; Bladen v. Philadelphia, 60 Pa. 464; Parker v. Philadelphia, 92 Pa. 401; Mathews v. Philadelphia, 93 Pa. 147.

John Blevins kept his account in the First National Bank of New Castle, in the name of "John Blevins, City Treasurer." This bank had not been made a city depository; and though these moneys were earmarked "City Treasurer," yet they were, notwithstanding, his own individual moneys, and subject to his check for any purpose he might designate: Slaymaker v. Farmers' Nat. Bank, 103 Pa. 616; Sibbs v. Phila. Saving Fund Society, 153 Pa. 345.

The power to incur debts by a city must be expressly given (except in certain cases), the provisions, when given, are mandatory, and any doubt of authority is resolved against such power: 1 Abbott, Mun. Corp., secs. 141, 143, 144; O'Rourke v. Philadelphia, 13 Pa. Dist. Rep. 379; McSpedon v. New York, 20 N. Y. Super. Ct. 601; 20 How. Pr. 395.

A voluntary payment of money made without fraud or constraint, though in ignorance of the law or legal circumstances of the case, cannot be recovered back: Natcher v. Natcher, 47 Pa. 496; Real Estate Saving Institution v. Linder, 74 Pa. 371; Finnel v. Brew, 81 Pa. 362; Gould v. McFall, 118 Pa. 455; Markley v. Stevens, 89 Pa. 279; Miller v. Hulme, 126 Pa. 277; Morris v. Tarin, 1 Dal. 147; Hall v. Shultz, 4 Johns. 240; De La Cuesta v. Insurance Co., 136 Pa. 62.

That a city treasurer cannot borrow money, turn it into the city treasury, use it for city purposes, and make the city liable has been clearly decided: Railroad National Bank v. Lowell, 109 Mass. 214; Agawam National Bank v. South Hadley, 128 Mass. 503; Lowell Five Cent Savings Bank v. Winchester, 90 Mass. 109; Benoit v. Conway, 92 Mass. 528; Dickinson v. Conway, 94 Mass. 487; Kelley v. Lindsey, 73 Mass. 287; McDonald v. Mayor, etc., of New York, 68 N. Y. 23.

*B. A. Winternitz* and *Oscar L. Jackson,* for appellee.—The action for money had and received is a substitute for a bill in equity, and lies wherever one has money of another in his

hands, which in equity and good conscience he ought not to retain. There need be no other privity of contract between the parties to support the action: Humbird v. Davis, 210 Pa. 311; McAvoy v. Commonwealth Title Ins. etc., Co., 27 Pa. Superior Ct. 271; Mason v. Waite, 17 Mass. 560; Hall v. Marston, 17 Mass. 575; Eagle Bank v. Smith, 5 Conn. 71; Rapalje v. Emory, 2 Dall. 51; Pugh v. Powell, 10 Cent. Repr. 335. ·

That the rule thus established as to contracts and liabilities of natural persons and private corporations applies also to municipal corporations, and that the latter also are liable upon an implied assumpsit for money received and retained or used by them, which, æquo et bono, they ought to refund, is well settled by the opinions of text-writers and jurists and by adjudicated cases: Nelson v. Mayor, etc., of New York, 63 N. Y. 535; McDonald v. Mayor, etc., of New York, 68 N. Y. 23; Gas Co. v. San Francisco, 9 Cal. 453; Argenti v. San Francisco, 16 Cal. 255; Louisiana v. Wood, 102 U. S. 294; Dill v. Wareham, 48 Mass. 438; Marsh v. Fulton County, 77 U. S. 676; Mayor, etc., of Nashville v. Ray, 86 U. S. 468.

The implied liability of municipal corporations is generally restricted to cases where the city obtains money or property of others by mistake or without authority of law, and appropriates such money or property under such circumstances, that the general law imposes the obligation to pay in order to do justice: Clark on Contracts, sec. 317; Barnet v. Paterson, 4 Cent. Repr. 248; Salt Lake City v. Hollister, 118 U. S. 256 (6 Sup. Ct. Repr. 1055); Allegheny v. McClurkan, 14 Pa. 81; Parker v. Philadelphia, 92 Pa. 401.

Opinion by Mr. Justice Brown, April 12, 1909:

John Blevins, who died January 7, 1899, had been treasurer of the city of New Castle for some years prior to his death. During the time he so served the city he kept an account with the appellee, the First National Bank of New Castle, depositing with it large sums of money to the credit of "John Blevins, City Treasurer." On September 19, 1898, he called at the bank and stated that he needed some money for the city, naming the amount as $5,431.49. This sum was the

aggregate of nine certificates of indebtedness which had been issued by the city to different persons for work done and materials furnished. He executed a note, of which the following is the material part:

"New Castle, Pa., Sept. 19, 1898.

" $5,431.49. Four months After Date, For Value Received I hereby promise to pay to The First National Bank of New Castle, Penn'a, or order at said bank Fifty four hundred thirty-one & 49-100 Dollars, with interest at the rate of 6 per cent. per annum after due, having deposited with said bank as collateral security for the payment of this note, and also as collateral security for all other present or future demands of any and all kinds of the said bank against the undersigned due or not due, or that may be hereafter contracted, including any indorsement made or that in future may be made by me the following property, viz: Sundries cert's of indebtedness of City of New Castle, Pa., for $5,431.49, and interest." The obligation was signed "City of New Castle, John Blevins Treasurer." The amount asked for by Blevins was placed to his credit as city treasurer. At the time the loan was made his account as city treasurer with the plaintiff showed a balance to his credit of $7,000. In addition to the proceeds of the loan he deposited on September 19, 1898, $2,568.51 in cash, making the credit balance $15,000. Between September 19, 1898, and the date of his death—January 7, 1899—he deposited various sums with the appellee, amounting in the aggregate to $67,267.50, making the total cash placed to the credit of his account during that period $82,267.50, against which checks were drawn and paid amounting to $55,767.50. Many of these checks were made payable to his own order and the cash was paid to him. At the time of his death there was to his credit with the appellee $26,500. On January 17, 1899, John H. Preston was elected as his successor, and the said balance was transferred from the account of John Blevins, city treasurer, and credited to the account of John H. Preston, city treasurer. Blevins had an account as treasurer with the Citizens' National Bank of New Castle, and the balance to his credit in that institution at the time of his death was $12,500.

The balance in the two banks aggregated $39,000. At no time between September 19, 1898, and January 7, 1899, was the balance in the account of Blevins as city treasurer less than $5,431.49. At the time he made the loan from the appellee he was clearly a defaulter, his default amounting at the time of his death to more than $25,000. There in no evidence, however, that the bank knew of the default at any time prior to his death. No action of the city or its council authorized the loan made by Blevins, and the city had no knowledge of the transaction until after his death. The First National Bank of New Castle was not even a designated depository of the city. The city, under the foregoing facts, refused to pay the plaintiff's claim, and in this action recovery is sought, not upon an express contract, as evidenced by the note, nor upon the certificates of indebtedness attached to it, but upon what it is contended is the implied obligation of the city arising out of the circumstances under which the money was credited to its financial agent. The position of the appellee, as stated by its counsel on the trial, was that the claim was not on the note or on the certificates attached, but for money advanced to the city which went into the city treasury, and, therefore, the city ought to pay it back on a claim for money had and received by it. In other words, the claim against the city was upon its implied liability, and recovery was permitted on that theory.

The duties of Blevins as city treasurer were limited to receiving the moneys of the city and paying them out on warrants. He had no authority by virtue of his office to do anything else for it or in its name and was powerless to make any promise on its behalf. An obligation signed by him as city treasurer could no more commit the city to its discharge than if signed by him as an individual. This is not questioned. The attempt of the appellee is not to enforce any valid contract executed by Blevins on behalf of the city, but is to compel payment, on the ground of the implied liability incurred by the municipality under the undisputed evidence in the case. It has been truthfully said of the extent of the liability of a municipal corporation that "the authorities are a tangled web

of contradictions, and it is difficult to assert any proposition with respect to the same for which adjudications on both sides may not be cited;" but we know of no case in which the doctrine of implied municipal liability was stretched to the limit to which the learned court below carried it in instructing the jury that the appellee could recover in this proceeding. The doctrine of such liability has been applied to cases of informal or irregular contracts entered into by a city and from which it has obtained substantial benefits. See cases referred to in 28 Cyc. of Law and Pro. 668 and 669. Argenti v. City of San Francisco, 16 Cal. 255, a leading case and the one upon which the learned judge relied for his instructions to the jury, was a case of that kind. The plaintiff, by virtue of contracts entered into with an officer of the city of San Francisco, which contracts were executed by such officer in his official capacity, made valuable and permanent improvements to the city for the exclusive benefit of itself and its inhabitants; these improvements were made under the immediate supervision of an officer of the city, and, when completed, were approved of and received by him on behalf of the city; in making the improvements the plaintiff relied on the validity of the contracts and the obligations of the city to pay as therein provided; the city authorities were fully informed of these facts, but took no steps to repudiate the contracts or to inform the plaintiff as to its disposition not to pay. On the other hand, it had collected moneys to pay for the improvements. In making the contract for them certain legal requirements had not been complied with, and for that reason the city ultimately attempted to repudiate liability for the work done. This, of course, was not permitted. The city had knowledge of what was being done and had undertaken to contract for it. It was receiving the benefit from the work done and had collected moneys to pay for the same. There was simply a want of compliance with legal requirements in making the contract. In the recent case of Long v. Lemoyne Borough, 222 Pa. 311, in which the municipality attempted to evade the payment of money which it had borrowed and intended to borrow, because the loan had not been contracted in strict conformity to legal requirements,

we said, in holding that, while there was no valid, express contract upon which it could be held, it was impliedly liable for money had and received. The borough had intended to contract for the money and could lawfully have contracted for it, and, having received and used it, was bound to pay. But this is not the situation here. If it were, the appellant would have to pay. The city of New Castle never intended to borrow the money from the appellee and had no knowledge until after the death of Blevins that he had made the loan. As stated, he was unquestionably a defaulter at the time he applied to the bank for the money. Suppose at the time he borrowed the money he had done so for the purpose of settling with the city and turning over its funds in his hands to his successor in office; if the amount lent to him by the bank had been sufficient to make up his default, he would have been able to pay over to the city all of its moneys in his hands, and, in turn, would have received from it whatever security he had given for the faithful discharge of the duties of his office. After a settlement so made, can it be seriously contended that the city should subsequently be compelled to pay to the bank the money borrowed by its defaulting treasurer for the purpose of covering up his default, simply because the money borrowed by him had been placed to his credit as treasurer of the city and paid over by him as a part of what he owed it? The mere suggestion of such a situation, possible at any time, it seems to us, is sufficient in itself to prevent recovery by the appellee. But even if he had not been a defaulter, a rule of public policy imperatively requires that, for the safety of municipalities, no one of its ministerial officers shall be permitted to impose liability upon it in the way Blevins is alleged to have done. It is because of the disastrous results that may come to municipalities if they are held impliedly liable for moneys borrowed by a municipal treasurer, without the knowledge, consent or approval of the municipality, even if placed to his official credit, that a recovery cannot be permitted in this case.

The second, third and fourth assignments of error are sustained and the judgment is reversed.