# First National Bank of New Castle, Appellant, *v.* New Castle.

*Municipalities—City treasurer—Borrowing money—Certificates of indebtedness—Collateral security—Notice—Banks and banking.*

Where a city treasurer without any authority from the city executes to a bank a promissory note which he signs with the name of the city followed by his own name as treasurer and recites in the note that he has deposited "sundry certificates of indebtedness of the city" as collateral security, the bank, in an action against the city on the certificates of indebtedness, but not on the note, cannot recover where it appears that the certificates had been endorsed in blank by the original holders, and there is nothing to show that the certificates were the individual property of the treasurer. In such a case the bank is presumed to have known at the time the loan was made that the certificates were the property of the city which the treasurer had no authority to pledge.

Argued October 15, 1912. Appeal, No. 91, Oct. T., 1912, by plaintiff, from judgment of C. P. Lawrence Co., June T., 1910, No. 20, on verdict for defendant in case of First National Bank of New Castle v. New Castle. Before FELL, C. J., BROWN, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit on certificates of indebtedness. Before GALBREATH, P. J., specially presiding.

At the trial the jury returned a verdict for defendant.

On a motion for a new trial and for judgment for plaintiff non obstante veredicto, GALBREATH, P. J., filed the following opinion:

The matters for consideration arising on the pending motions as well as out of the exceptions taken on part of plaintiff, during the progress of the trial, may be reduced to three classes, namely:

First. The instructions of the court as to the inferences to be drawn by the jury from the nature of the

transaction upon which the plaintiff came into possession of the certificates of indebtedness sued upon.

Second. The admission of the testimony of the payees mentioned in said certificates as to the circumstances of their payment and by whom paid.

Third. The admission of evidence tending to show that after and about the time of the transaction in question the city treasurer was paying out of the city treasury large numbers of certificates of indebtedness direct to the holders thereof and not upon warrants first obtained therefor from the city controller.

The pending suit arose out of a transaction between the plaintiff bank and John Blevins, then treasurer of the City of New Castle on September 19, 1898, which was in writing and is as follows: "New Castle, Pa., Sept. 19, 1898. "$5,431.49. Four months after Date, For Value Received I hereby promise to pay to the First National Bank of New Castle, Penn'a, or order at said bank Fifty-four Hundred thirty-one & 49-100 Dollars, with interest at the rate of 6 per cent. per annum after due, having deposited with said bank as collateral security for the payment of this note, and also as collateral security for all other present or future demands of any and all kinds of the said bank against the undersigned due or not due, or that may be hereafter contracted, including any indorsement made or that in future may be made by me the following property, viz: Sundries cert's of indebtedness of City of New Castle, Pa., for $5,431.49 and interest." The obligation was signed "City of New Castle, John Blevins, Treasurer."

The contract thus made was without authority from the City of New Castle. The amount of this note was placed to the credit of Blevins as city treasurer in said bank. On January 7, 1899, and before the said note fell due, Blevins died. The City of New Castle refused to pay the note and thereupon the bank brought suit, not on the note, but on the implied obligation of the city to pay for money advanced to the city and which went into

its treasury. On appeal to the Supreme Court it was held that there could be no recovery, under the circumstances of that case, Blevins being a defaulter, as city treasurer, at the time he effected the loan in consequence of which no consideration passed to the city and further that as a ministerial officer of the city he could not in any event impose liability on the city in the manner by which he had sought to do so. See 224 Pa. 285. Thereupon the present suit was instituted not upon the implied obligation of the city to pay, nor yet upon the note which was the basis of the transaction, but on the certificates of indebtedness which were pledged as security for the note. These certificates were endorsed in blank by the holders thereof and in that form were delivered by Blevins, as city treasurer, to the bank. The promise to pay and the pledge of the collateral were part and parcel of the same contract. There is nothing in the form of the contract to indicate that while the note was made by John Blevins, treasurer, the pledge of the collateral contained in the same writing was by John Blevins, individually. Had the endorsement on the certificates been to him in his individual right, the reasonable inference following their delivery, as collateral, would have been that he was pledging his own property. In the absence, however, of any such endorsement, the only index of the character in which he held them is found in the capacity in which he pledged them to the bank, which he did over the signature "City of New Castle, John Blevins, Treasurer." There is nothing whatever either in the form of the contract entered into with the bank or in the form of the endorsement to indicate individual ownership of the certificates. Under the circumstances there was no means of knowing how he held them, except the manner in which he disposed of them.

If it be said, however, that the certificates were negotiable and passed by delivery, yet this does not relieve the difficulty. That they therefore came into possession

of Blevins as his own property is a non sequiter and the assumption that they did so is met by the fact that he pledged them expressly in his capacity as city treasurer. Besides this, the certificates did not pass to the bank by delivery alone, but by delivery under the written agreement contained in the note. The delivery followed and took on the character of the agreement.

Nor can it be said, we think, that the bank was an innocent purchaser without notice that the certificates did not belong to Blevins in his own right. The bank was not dealing with John Blevins, the individual, but with him as city treasurer, assuming to act for the city and in its name. In that way and in no other he sought not only to impose the liability, but also to pledge the security. The officers of the bank made no inquiry as to the ownership of the security or as to the authority of the treasurer to pledge it, although the very form and nature of the transaction were sufficient to put them on their inquiry. Having failed to do so, we think they cannot be heard to say that they believed themselves to have been dealing with him in any other character than that which he was expressly holding out at the time.

In view of these considerations we deemed it the duty of the court to say to the jury that they not only could, but should infer that Blevins held the certificates and turned them over to the bank in his capacity as city treasurer, unless there was evidence that, notwithstanding the form of the transaction, they were his own property, paid for with his own money and the jury were instructed to this effect. The suggested inference seemed a necessary one from the nature of the transaction and we think there was no evidence in the case sufficient to negative or turn it aside. The only thing, seemingly, relied upon by the plaintiffs with this end in view was the possession of the certificates by Blevins. But as already said, in the absence of any endorsement to him, the character in which he held them was evi-

denced alone by the character in which he disposed of them.

. At the trial the court was asked by plaintiff's counsel to strike out the testimony of the defendant's witnesses, who were the original holders of the certificates, as to their payment. These witnesses testified that they went to the city treasurer's office and received payment directly at the hands of Blevins, the city treasurer, and without any warrant. They also testified that he went to a vault or safe, brought out a small box and took from it the money with which payment was made. There was also testimony on part of other witnesses tending to show that this was the place in which he kept the city funds. This testimony tended to corroborate and strengthen the presumption growing out of the transaction itself that the certificates had been in fact paid out of city funds. And whilst it is true that the bank, so far as the evidence goes, did not have actual knowledge of these things, yet the fact that they were dealing with the city treasurer was sufficient to have put them on their inquiry as to whether he owned the securities in his own right, and, if not, then whether all the precedent steps necessary to support his authority as city treasurer in negotiating them had been taken. We are not convinced that there was error in receiving or refusing to strike out the testimony of these witnesses.

The same thing may be said we think of the evidence tending to show that at and for considerable time before the transaction in question, Blevins, as city treasurer, was paying out of the city treasury large numbers of certificates of indebtedness direct to the holders without first requiring a warrant from the city controller. That these were paid out of city funds is evidenced from the fact that it was his custom after having made payment to obtain warrants payable to himself as city treasurer for the certificates so paid by him. These seemed so numerous that it might almost be said to have been the custom of his office, at that time.

The extent to which and the time during which this was carried on tended to corroborate the defendant's contention based on the nature of the transaction itself and on the fact of direct payment made to the holders of the certificates, in suit, that these had been in fact paid for out of the city funds. The fact that no warrants appear to have been turned in for these particular certificates makes it evident that after payment by the treasurer they were retained by him until delivered to the bank. The objection that the bank had no knowledge of the manner of doing business in the treasurer's office is answered by the fact that in dealing with the city treasurer, who was assuming to act for the city, the duty of inquiry not only as to his authority, but as to all the material matters entering into the transaction became imperative and notice must be assumed of all those things which inquiry would have discovered, including the manner in which he came into possession of the certificates and whose they were.

It is unnecessary to cite any authority other than the decision of the Supreme Court in the former suit between the same parties to sustain the position that if the certificates in question were the city property, Blevins had no authority as city treasurer to pledge them in any event, much less as security for an illegal contract.

Under the undisputed evidence in the case we think no other verdict could be sustained than that which was rendered by the jury. In fact, if the note which contained the contract of the parties and which showed the nature of the transaction had been placed in evidence by the plaintiff, without further evidence than was produced upon the trial on part of plaintiff, but embracing it all, we think it would have been the duty of the court to enter a compulsory nonsuit. But as the note did not appear in evidence until offered by the defendant, it was necessary to dispose of the case by verdict. If, however, the note itself was such as to necessarily defeat the plaintiff's claim, the question of the admission of other

evidence complained about becomes unimportant, and even if erroneous, as we think it was not, it was nevertheless harmless.

For these reasons the motion for new trial is overruled, as is also the motion for judgment non obstante veredicto.

*Error assigned* was in refusing binding instructions for plaintiff.

*C. H. Akens,* of *Akens, Wilkison, Lockhart & Chambers,* with him *B. A. Winternitz,* for appellant.—The certificates were endorsed in blank by the payees named in them. They thus became transferable by delivery only, and the mere possession of them was sufficient evidence of ownership: Mitchell v. Fuller, 15 Pa. 268; Mullen v. French, 9 Watts 96; Lawrance v. Fussell, 77 Pa. 460.

The city attempted to prove payment, but it did not attempt to prove payment at or subsequent to maturity. The bank was presumed to have received the paper before maturity. Mere proof of it being in the possession of the maker after it had originally gone out and before it came to the bank, without more, would not sustain the defense: Morley v. Culverwell, 7 Meeson & Welsby, 174; Eckert v. Cameron, 43 Pa. 120; Mishler v. Reed, 76 Pa. 76; Helzer v. Helzer, 193 Pa. 217; Connelly v. McKean, 64 Pa. 113.

The bank must be presumed to have known the process by which certificates could be legally redeemed and that they would be cancelled and in the hands of the controller after redemption. But these were not in the custody of that officer and they were not cancelled. The bank must also be presumed to have knowledge that the city treasurer could legally acquire and own them and they bore the evidence of such ownership only: Fulweiler v. Hughes, 17 Pa. 440; McSparran v. Neeley, 91 Pa. 17; Second Nat. Bank v. Morgan, 165 Pa.

199; Phelan v. Moss, 67 Pa. 59; Gibson v. Lenhart, 111 Pa. 624.

*James A. Gardner,* City Solicitor, and *Robert K. Aiken,* for appellee.

OPINION BY MR. JUSTICE BROWN, January 6, 1913:

On September 19, 1898, John Blevins, now deceased, was treasurer of the City of New Castle. On that day he negotiated a loan, in the name of the city, from the First National Bank of New Castle, where he kept his account as city treasurer. The amount of the loan was $5,431.49, and he executed and delivered to the bank a note of which the following is the material part:

"New Castle, Pa., Sept. 19, 1898.

$5,431.49.    Four months After Date, For Value Received I hereby promise to pay to The First National Bank of New Castle, Penn'a, or order at said bank Fifty four hundred thirty-one & 49-100 Dollars, with interest at the rate of 6 per cent. per annum after due, having deposited with said bank as collateral security for the payment of this note, and also as collateral security for all other present or future demands of any and all kinds of the said bank against the undersigned due or not due, or that may be hereafter contracted, including any indorsement made or that in future may be made by me the following property, viz: Sundries cert's of indebtedness of City of New Castle, Pa., for $5,431.49, and interest." The obligation was signed "City of New Castle, John Blevins, Treasurer." This contract or loan was made without the knowledge of the city and without any authority from it; but the bank, after the death of Blevins, who was a defaulter, brought suit against it for money advanced to it, and there was a recovery in the court below. On appeal by the city the judgment against it was reversed, for reasons to be found in the opinion of this court in First National Bank v. New Castle, 224 Pa.

285. Subsequently this action was instituted by the bank on the certificates of indebtedness which had been pledged by Blevins as collateral security for the note. These certificates had been issued by the city for municipal improvements and were indorsed in blank by the original holders. In this form they were delivered by Blevins, as city treasurer, to the bank. Nothing on the face of the note made by him as city treasurer indicated that the collateral which he thus pledged was his individual property, and the bank, in taking the certificates from him in pursuance of the writing, is presumed to have known, as the learned trial judge correctly held, that they were the property of the city, for he undertook to pledge them as its treasurer, but without any authority whatever from it to do so. On the trial these certificates were offered in evidence by the plaintiff without the accompanying note, which showed how they had been pledged. If the whole transaction had appeared in the presentation of plaintiff's case by the production of the note, the defendant's motion for a nonsuit could not have been denied, for nothing was developed by the plaintiff to rebut the presumption of ownership appearing from the note itself. The contention of the appellant as to the negotiability of the certificates is immaterial, in view of the notice of ownership in them appearing from the note, which the city, in its defense, offered in evidence. At the close of the testimony binding instructions for the return of a verdict in favor of the defendant would have been proper, for nothing shown by the plaintiff in rebuttal repelled the presumption of its knowledge of the ownership of the certificates. The reasons why all of the assignments of error should be overruled are so forcibly stated in the well-considered opinion of the learned trial judge, refusing a new trial and judgment for the plaintiff non obstante veredicto, that we cannot profitably add anything to it.

On that opinion let the judgment be affirmed. It is so ordered.