Brubaker *v.* Berks County, Appellant.

158

Argued January 10, 1955.  Before STERN, C. J.,
STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*James W. Bertolet,* with him *Donald F. Spang,* for County of Berks, appellant.

*George B. Balmer,* with him *Cornelius C. Leary, Carl F. Mogel,* and *Snyder, Balmer & Kershner,* for Fireman's Fund Indemnity Co., appellants.

*Jean de B. Bertolet,* with him *Frederick J. Bertolet,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 21, 1955:

In November and December, 1951, the plaintiff Riley J. Brubaker gave to Samuel N. Moyer two checks totaling $7,000 for the purchase of certain real estate. Mr. Moyer, who at the time was County Treasurer of Berks County, did not use the checks for the purpose intended by Brubaker but deposited them in his account as County Treasurer. When Moyer's term as Treasurer expired in January, 1952, a settlement of his accounts showed them to be in balance.

Moyer died on June 17, 1952, without having applied the plaintiff's money to the projected real estate transaction or without having returned the money to the plaintiff, whereupon the latter in October, 1952,

brought suit against the County to recover his $7,000, claiming that the County had been unjustly enriched in that sum. The County brought in as additional defendants the estate of the deceased Moyer and the Fireman's Fund Indemnity Company (surety on Moyer's public official bond). At the ensuing trial the jury returned a verdict in Brubaker's favor in the sum of $7,823.90, and a verdict in the same sum in favor of the County against Moyer's estate and the bonding company, as additional defendants. Both defendants moved for a new trial and for judgment n.o.v. The motions were refused by the court below and this appeal followed.

Looking at this entire transaction through the eyes of abstract justice, one can come to no conclusion other than that Brubaker is entitled to his $7,000. Moyer had no right to turn the money over to the County and the County had no ethical or moral right to keep it once it was ascertained that the money in no way belonged to the County. Coming to this conclusion of natural justice, it would be shockingly incongruous if the law were to stamp on the money a title of County ownership simply because, through some adroit maneuvering on the part of the Treasurer, the money had fallen into the County's coffers.

Section 55 of the Negotiable Instruments Law (Act of May 16, 1901, P.L. 194, Ch. I, Art. IV, 56 PS §135) states that: "The title of a person who negotiates an instrument is defective, within the meaning of this act, when he obtained the instrument or any signature thereto by fraud, duress or force, and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith or under such circumstances as amount to a fraud." Since Moyer's title to the two checks was defective in that he negotiated them in breach of faith or under circumstances

which amounted to fraud, the defendant County had the burden of showing under Section 59 of Negotiable Instruments Law, supra, 56 PS §139, that it had acquired title as holder in due course. It thus was obligated to show that it had met the requirements of a holder in due course by demonstrating, inter alia (Section 52 of Negotiable Instruments Law, supra; 56 PS §132) that it had given value for the checks. The County failed to produce such proof, advancing only the supposition that Moyer might have owed the County $7,000 before he deposited the checks and that, therefore, the County came into possession of the checks through value received. The County entertained also the supposition that Moyer might have extracted $7,000 from the safe, leaving there in its place the two checks. But the bridge of legal proof cannot be built on the phantom piers of suppositions. There was no evidence of any kind to give form and substance to these suppositions. Even if it had been shown that the Treasurer might have on other occasions cashed checks in the manner hinted at, this would not prove that he had done the same with these particular checks.*

In the absence of proof of a legal *quid pro quo,* the situation here in controversy is controlled by the principle that where property is fraudulently converted and diverted from its proper use, the third person into whose hands the property falls without consideration, even though he be innocent of knowledge of any wrongdoing, has the obligation to restore to its rightful owner the property thus wrongfully appropriated. Illustration No. 5, under Sec. 128, of Restatement, Restitution, is particularly apropos here: "5. A is the beneficiary of a trust of share certificates. B is the trustee. In

---

* *Caulfield v. Aetna Ins. Co.,* 144 Pa. Superior Ct. 257 at 265; *Roney v. Clearfield Co. Grange Ins. Co.,* 332 Pa. 447, at 449.

violation of his fiduciary duty, B gratuitously transfers the certificates to C who has no notice of A's interest. B absconds. C refuses to return the certificates upon demand. C, as well as B, is under a duty of restitution to A . . ."

The defendants urge upon us, in support of their position, the decision in *First National Bank v. New Castle,* 224 Pa. 285, but it will be observed in a careful analysis of our Opinion in that case that the plaintiff there had contracted with the City Treasurer *as such,* and not as an individual. This Court held that the plaintiff could not be afforded relief as against the City. To have held otherwise would have meant discarding all safeguards set up to protect municipalities with regard to debts sought to be contracted in their behalf. In that case the plaintiff bank could have guarded itself against loss by first inquiring as to the authority of the City Treasurer to contract the indebtedness there involved in behalf of the municipality. In the case at bar, however, the plaintiff never dealt with Moyer as County Treasurer, and thus we do not have the question of policy which was present in the New Castle case.

The County also contends that it never received the checks because the account wherein they were deposited was not the property of the County but of the treasurer. This argument must fail. In *Gordon v. Dime Bank Title & Trust Co.,* 315 Pa. 305, the Register of Wills of Luzerne County deposited inheritance taxes collected by him in an account under his name with the designation: "Agent, transfer inheritance tax." This Court there held that the Commonwealth was the owner of the fund: "No substantial argument can be advanced for the proposition that the Commonwealth is not the owner of the fund in controversy here. Any acts of dominion exercised over it by the register of

wills were performed merely as agent for the Commonwealth . . . we have not been referred to any statute restricting the discretion of a register of wills in temporarily depositing money collected by him for inheritance tax purposes before transmission to the department of revenue."

At the trial the Court permitted the plaintiff to testify to conversations between him and the deceased Moyer. The defendants submit that this testimony offended against the Dead Man's Rule (Act of May 23, 1887, P.L. 158, Sec. 5, cl. (e); 28 PS §322). But here the plaintiff's suit was not directed against anyone representing the interests of the decedent. The fact that the County brought Moyer's widow on the record, as the executrix of his estate, could not erect a barrier against the plaintiff's rights in proving his case against the County. The Act of April 10, 1929, P.L. 479, which permits the joining of additional defendants, does not affect the competency of witnesses. In the case of *McCaulif et al. v. Griffith,* 110 Pa. Superior Ct. 522, the plaintiff sued the defendant Griffith for injuries resulting from a collision with the defendant's vehicle operated by one Raymond H. Logan who died before the trial. Griffith brought in as additional defendant the estate of the deceased Logan. Upon a verdict being returned in favor of the plaintiff, Griffith appealed, urging error in the Trial Court's having permitted the plaintiff to testify regarding the accident, when the driver was not living at the time. The Superior Court rejected this contention and said: "The only way in which plaintiff's competency could be affected by the Act of 1929, would be on the theory that the joinder of Logan at the instance of defendant made him a party defendant in so far as the original suit brought by plaintiff was concerned, so that he would be in the same position as if originally sued jointly

with his employer the other defendant. There is nothing in the Act of 1929, however, to justify such conclusion. In Vinnacombe v. Philadelphia and American Stores Company, 297 Pa. 564, the court, in discussing the Act of 1929, said by Mr. Justice SIMPSON (page 569): 'Nothing in the act shows the slightest intention to affect plaintiffs in such suits. . .'

"The amendment of June 22, 1931, supra, gives the right, at the instance of defendant, to have joined, as additional defendants, persons whom he alleges are alone liable, or jointly or severally liable with him, for the cause of action declared on, and provides for the entry of judgments against such additional defendants. It, however, as indicated by its title was 'to regulate procedure' and not in any way to affect the competency of witnesses." It is obvious from the above that since the plaintiff here was a competent witness prior to the County's having brought in the widow of Moyer on the record, he perforce remained a competent witness thereafter.

The defendant insurance company also argues that a surety should not be held liable on an official's bond where the period for appeal from the Controller's report has expired and the report shows no shortage by the official. But there is no such exception or proviso in the statute of limitations with respect to suits on official bonds: Act of May 18, 1949, P.L. 1410, section 1-8 PS §101.

Finally it is contended, and particularly by the Fireman's Fund Indemnity Company, that the County was not unjustly enriched since "it received no more than it was entitled to from the county treasurer." It is to be remembered, however, that the $7,000 was not taken from the County Treasurer but from the plaintiff Brubaker who certainly owed the County nothing. If the plaintiff had accidentally left his wallet on the

County Treasurer's desk and the Treasurer had dropped it into the County till, it could not be maintained with any semblance of law and justice that the County became the legal possessor of it. Legally, equitably and morally the position of the County, as well as that of the additional defendants, is no stronger than that which would be involved in the illustration given.

We see no merit in the matters raised in this appeal and the Judgment entered in the lower court is accordingly affirmed.

CONCURRING OPINION BY MR. JUSTICE JONES:

It is asserted that the fact that Moyer's books were in balance when he vacated his office as county treasurer destroys the plaintiff's right to recover in this action. The fallacy of that assertion will, I believe, become apparent upon further reflection.

It is agreed all around that the county's right to the proceeds of the Brubaker checks would be unassailable if it became a holder thereof in due course. One of the requisites of a holder in due course is that he took the instrument "for value" (Section 52 of the Negotiable Instruments Law, 56 PS §132) and, because of Moyer's defective title to the checks (Section 55, 56 PS §135), the county had the burden of proving that it acquired the instruments as holder in due course (Section 59, 56 PS §139). Yet, the county failed to prove with specificity that it had given "value" for the checks and, consequently, failed to sustain its burden.

No one questions the fact of Moyer's embezzlement or breach of trust. But, it is essential to the question of "value" from the county to determine just when Moyer's extraction of county funds occurred with relation to the date of his deposit of the checks to his

credit as county treasurer. Thus, if Moyer's default as treasurer existed at the time he deposited the Brubaker checks or if he merely cashed them by exchanging them for current cash in the drawer of the treasurer's office, the county would have given "value" for the checks, as "value" is defined by the Negotiable Instruments Law (Section 25, 56 PS §62).

If, however, Moyer was not in default when he deposited the checks, then the county did *not* give "value" at the time of his negotiation of them and, therefore, could not be deemed holder thereof in due course. That such could have been the actual circumstance attending Moyer's deposit of the checks is by no means mere conjecture. And, while it would have been ridiculous for Moyer to breach his duty to Brubaker in order to make a present of the proceeds to the county, it is neither fanciful nor unrealistic to suppose that Moyer may have built up his county treasurer's account with the deposit therein of the checks in order that he might *thereafter* extract the equivalent thereof from current county receipts.

In short, the county did not prove sufficient facts from which the jury could have inferred with reasonable certainty that "value" was given for the Brubaker checks. Since the county failed to meet its burden, the jury logically returned a verdict for the plaintiff.

I concur in the opinion for the court.

Mr. Justice ALLEN M. STEARNE and Mr. Justice CHIDSEY join in this concurring opinion.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE HORACE STERN:

What to my mind is the controlling fact in this case was given little if any consideration in the ma-

jority opinion, with the result, as I view it, that the present decision of the court is plainly erroneous.

There is no question as to Moyer's embezzlement or breach of trust. He received from plaintiff two checks, one, a treasurer's check of the Farmers Trust Company of Lebanon in the sum of $5,000 payable to the order of plaintiff and endorsed by him, and the other a cashier's check of the First National Bank of Schaefferstown in the sum of $2,000 likewise payable to the order of plaintiff and endorsed by him. Each of these checks was further. endorsed "For deposit only to the credit of Samuel N. Moyer, County Treasurer" and deposited by him to the credit of the County of Berks, General Account, Samuel N. Moyer, County Treasurer, on November 26, 1951, and December 17, 1951, respectively. Moyer's term as Treasurer expired very shortly thereafter, namely, on January 7, 1952, and he thereupon turned over to his successor the exact amount which the county was entitled to receive from him; in other words, *his books were in balance. It is that fact which destroys the right of plaintiff to recover in this action.* And while he naturally is entitled to sympathy for his loss it must be remembered that that loss was due to the embezzlement of his own agent to whom he had entrusted the money for the purchase of some real estate and that the County of Berks was a wholly innocent party in that it received from Moyer not a penny more than that to which it was entitled.

Under the Negotiable Instruments Law the County of Berks became a holder in due course of the two checks in question. Section 52 provides that a holder in due course is one who took the instrument "in good faith and for value," and "at the time it was negotiated to him he had no notice of any infirmity in the instru-

ment or defect in the title of the person negotiating it." The County of Berks had no such notice of infirmity or defect, it being an elementary principle of law that knowledge on the part of an agent under such circumstances is not binding upon his principal: Restatement, Agency, §282, especially illustration 13. Moreover, the County gave value. As already stated Moyer's books were in balance and there are only two possible explanations to account for that fact—either he merely cashed the checks and took the equivalent amount of money from the funds in his possession as Treasurer, or, being in default at the time and therefore indebted to the County, he deposited the checks in his Treasurer's account to make good the deficiency, in which case the County acquired a good title to the checks because section 25 of the Negotiable Instruments Law provides that an antecedent or pre-existing debt constitutes value. It is immaterial which of these occurrences took place because in either event the result is the same. The majority opinion chooses to characterize this as "supposition" and not "legal proof," but I cannot conceive of any more reliable proof than that which rests on an impregnable mathematical basis. It is true, as a mere matter of theory, that Moyer's deposit of the checks might have constituted at the time an overpayment, that he was not *then* in debt to the County but defaulted *later* in the same amount. It would, however, be so ridiculous to imagine that he committed a criminal act merely in order to present the money he embezzled to the County as a pure gift that to give legal countenance to such a theory would be— to say the least—wholly unrealistic. I repeat, therefore, that the controlling fact in this case is that, when Moyer left office, the assets were intact and his books in balance and that consequently the County of Berks did give value for these checks and became a holder

of them in due course under the terms of the Negotiable Instruments Law.

I would reverse the judgments of the court below.