Henry ARMSTRONG, Administrator of
the Estate of Ella Armstrong,
Deceased,

v.

UNITED STATES of America (Carrie
Holmes and Sarah Duhart, Third-
Party Defendants).

Civ. A. No. 22328.

United States District Court
E. D. Pennsylvania.
March 23, 1959.

Jerome E. Furman, Philadelphia, Pa., for plaintiff.

Joseph J. Zapitz, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

Benjamin H. Wolf, Philadelphia, Pa., for third-party defendants.

VAN DUSEN, District Judge.

### I. Findings of Fact

The trial judge makes the following Findings of Fact:

1. Henry Armstrong, the plaintiff in this action, is the administrator of the estate of Ella Armstrong, having been duly qualified and appointed as such on February 26, 1957.

2. Henry Armstrong was the husband of the decedent, Ella Armstrong, with whom he lived happily.

3. Defendant in this action is the United States of America, acting by and through the United States Post Office Department, Postal Savings System.

4. Sarah Duhart and Carrie Holmes, sisters of the deceased Ella Armstrong, are third-party defendants in this action, defendant United States of America's motion to bring in Sarah Duhart and Carrie Holmes as third-party defendants having been granted on July 3, 1957.

5. On August 1, 1955, Ella Armstrong had on deposit, credited to her own account (Account No. 12736), in the United States Post Office at 16th and Huntingdon Streets, Philadelphia, the sum of $1,400 plus accrued interest.

6. On August 9, 1955, Ella Armstrong executed in her own handwriting Post Office Form PS 304 (Exhibit TP–1), entitled "Depositor's Authorization to Postmaster to Pay Principal and Interest to a Representative," which form authorized and directed the United States Postmaster to pay the principal and interest of Account No. 12736 to Sarah Duhart, and delivered this signed form to Sarah Duhart.

7. On August 9, 1955, Sarah Duhart presented Form PS 304 (Exhibit TP–1) to the Post Office Department for payment, which was refused by the Post Office Department for the reason that this form lacked the necessary assurance (i. e., fingerprints of the depositor) that the signature thereon was that of Ella Armstrong.

8. On August 10, 1955, Ella Armstrong properly executed, in her own handwriting, a second Post Office Form PS 304 (attached to Exhibit D–1), which form authorized and directed the United States Postmaster to pay the principal and interest of Account No. 12736 to Sarah Duhart, and delivered this signed form to Sarah Duhart.

9. On August 10, 1955, Sarah Duhart presented the second executed Post Office form described above to the Postmaster, Philadelphia, Pennsylvania, for payment and received therefrom a United States Treasury Check (No. 38775), payable to Ella Armstrong, in the sum of $1400 and cash in the amount of $7, which represented accrued interest.

10. On August 23, 1955, Ella Armstrong died in Philadelphia, Pennsylvania, survived by her husband, Henry Armstrong, and her two sisters, Sarah Duhart and Carrie Holmes.

11. The defendant, through the Postmaster, was notified in writing of the death of Ella Armstrong on or about September 1, 1955, by George W. Cupps, Jr., counsel for Sarah Duhart.

12. Around the end of August or the first few days in September 1956, Henry Armstrong went to the above-mentioned United States Post Office at 16th and Huntingdon Streets to inquire about the $1,400 in his deceased wife's account. He was told by the superintendent that the matter was being investigated by representatives of the Post Office Department in Washington. Subsequently, he obtained a lawyer and has received no money from the account.

13. On or about January 5, 1956, Sarah Duhart, by her counsel, returned the Treasury Check described above to the Post Office Department, at the request of that agency, for the purpose of changing the name of the payee to accord with the direction contained in the Form PS 304 (attached to Exhibit D–1) presented to the Postmaster by Sarah Duhart on August 10, 1955.

14. On or about January 20, 1956, Sarah Duhart received a United States Treasury Check (No. 39,556) in the sum of $1,400 and payable to herself from the Postmaster, Philadelphia, Pennsylvania, in lieu of the check referred to in paragraph 9 above, and used the proceeds received therefrom for her own benefit and for the benefit of her sister, Carrie Holmes.

## II. Discussion

The gist of plaintiff's complaint against the Government is that the payment by the Government on January 23, 1956, to Sarah Duhart of the $1,400 in the account of plaintiff's deceased wife was in violation of the postal laws and regulations, specifically §§ 84.4(d) and 84.6(c) of Title 39, Code of Federal Regulations (1948 Ed.). Regulation 84.4 (d) provided:

"If the death of a depositor occurs after he has signed an order for a withdrawal and before it has been presented for payment, the postmaster, if aware of such death, shall defer payment and proceed as provided in 84.6."

Regulation 84.6(c) provided, in substance, that a depositor can designate a beneficiary to receive payment of the moneys in his account only through the formality of a will and not by use of a form such as Form PS 304.

The Government, on the other hand, denies that plaintiff has stated a claim upon which relief can be granted and affirmatively sets up as a defense that the events that transpired on August 10, 1955, between Ella Armstrong and Sarah Duhart constituted a gift from Mrs. Armstrong to Mrs. Duhart and Mrs. Holmes of the $1,400 in the account, Mrs. Duhart to transfer $400 to Mrs. Holmes and retain the remaining $1,000.

The contentions of the plaintiff cannot be sustained. Referring to § 84.4(d) specifically, there is serious doubt that it applies to the situation presented here, since the withdrawal order was "presented" for payment, and pay-

ment was made by Government check, before the death of the depositor. In any event, §§ 84.4 and 84.6 do not govern the events of which plaintiff complains [1]—namely, those occurring on January 23, 1956. It is clear that receipt of a certified check is the equivalent of a receipt of cash. Hamburger Bros. & Co. v. Third Nat. Bank & Trust Co., 1939, 333 Pa. 377, 384, 5 A.2d 87. The obligation, as represented by the certified check, becomes that of the certifying bank. It follows that receipt of a bank's check is equivalent to a receipt of cash. A check of the United States Treasury would have the same effect. Also, it appears that receipt by an agent of a certified check constitutes payment to the principal. See comment (b) to § 72 (a) of Restatement, Second, Agency. Therefore, assuming that Mrs. Duhart was only Mrs. Armstrong's agent, when she received the Treasury's check for $1,400 made payable to Mrs. Armstrong on August 10, 1955, the obligation of the Post Office to Mrs. Armstrong was, from the Government's standpoint, discharged. After this date, the Government would owe no duty, as defined by the above-mentioned regulations, to Mrs. Armstrong or her administrator. Whatever Mrs. Duhart may have done with this check after the death of Mrs. Armstrong is a matter to be settled between Mr. Armstrong and Mrs. Duhart.

■ In addition to the foregoing, plaintiff not only ought to be estopped from asserting this claim, but also he has offered no evidence to support any general claim that the Government was negligent in paying the money in the account to Mrs. Duhart. Plaintiff has only shown that he inquired into the status of the account through the superintendent of the Huntingdon Street Post Office around the first of September, 1955, and that he has been paid no money from this account. The record does not show that plaintiff did anything from the time of his inquiry until the present suit. His failure to object to the appropriate postal authorities' honoring the check delivered in his wife's lifetime to Mrs. Duhart or to their giving a new check made payable to Mrs. Duhart presents a situation which gives rise to the application of the maxim that, where one of two innocent persons must suffer, the loss should fall on the one who facilitated it. Ervin v. City of Pittsburgh, 1940, 339 Pa. 241, 14 A.2d 297; Weiner v. Pennsylvania Co., 1947, 160 Pa.Super. 320, 325, 51 A.2d 385.

■ Also, it is well settled that liability is only imposed upon saving depositories, as distinguished from commercial banks, upon a showing of want of ordinary care and that, where the savings depository has shown that it complied with its regulations governing withdrawals in honoring the withdrawal and payment in question, as the Government has done here (see Finding of Fact No. 8 and 39 C.F.R. (1955) § 63.6(c)), the burden is on the depositor to show negligence on the part of the bank. Bulakowski v. Philadelphia Sav. Fund Soc., 1921, 270 Pa. 538, 113 A. 553; Saji v. Philadelphia Sav. Fund Soc., 1934, 112 Pa.Super. 149, 170 A. 334. Even assuming not only that plaintiff's inquiry constituted a claim for the money, but also

1. It is to be noted that 39 C.F.R. (1955) contains the postal regulations in effect from August 1, 1955, to February 1, 1956, and, therefore, would govern the events that transpired in the present case. This volume replaces 39 C.F.R. published in 1949 and reflects the reorganization of the Postal Regulations begun in 1954 (19 Fed.Reg. 7765). See Preface to 39 C.F.R. (1955). The section of the regulations in effect during the period involved here which is relevant to the issues involved is 39 C.F.R. (1955) § 63.6 (c), which reads as follows:

"(c) *Through a representative.* If you are unable to appear in person, you may designate a representative to make a withdrawal. When it has been shown to the postmaster's satisfaction that you cannot appear in person, he will furnish the necessary blank order form. When the executed order and endorsed certificates are presented to the postmaster, he will make payment if satisfied as to your identity and that of your representative."

that the superintendent's duties encompassed the hearing of such claims, of which there is, again, no proof, so that the Government was put on notice of the claim [see Todd v. Skelly, 1956, 384 Pa. 423, 428, 120 A.2d 906], plaintiff has not sustained its burden. As a result, the Government cannot be held liable to plaintiff.[2]

 In the event that the trial judge should be in error in his conclusion that the Government (a) owed no duty to Mrs. Armstrong or her administrator which it breached by the events of January 23, 1956, and (b) in any event, was not negligent, the following finding of fact, in addition to those stated above, is made with reference to the issue of whether or not there was a gift from Mrs. Armstrong to Mrs. Duhart:

"1. When Mrs. Armstrong executed Form PS 304 (attached to Exhibit D-1), authorizing and directing the United States Postmaster to pay the principal and interest of Postal Savings Account No. 12736 to Sarah Duhart, and delivered such form to Sarah Duhart, she intended to make a gift causa mortis of the money in the account to Sarah Duhart."

It is clear that the Government has the ultimate burden of proving the gift, since its defense rests on the claim of the alleged donee, even though the donee has possession of the item in question. Henes v. McGovern, 1935, 317 Pa. 302, 176 A. 503. To sustain this burden, the Government offered the testimony of Mrs. Duhart. This testimony was objected to by plaintiff on the ground of the Pennsylvania "Dead Man's Statute," 28 P.S. § 322 (F.R.Civ.P. 43(a), 28 U.S. C.A.). The trial judge heard the testimony reserving his ruling. Mrs. Duhart related that she was present when Mrs. Armstrong executed the withdrawal and that, upon Mrs. Armstrong's delivery of the form to her, she said to her, in substance, that the money was hers, if Mrs. Armstrong should die, $400 for Carrie Holmes and the rest for herself. If this evidence is admissible, the trial judge finds that the necessary elements for proving a gift have been established. A donative intent on the part of Mrs. Armstrong has been shown,[3] and a delivery as complete as the circumstances permitted was consummated. See In re Turner's Estate, 1914, 244 Pa. 568, 90 A. 916; see, also, In re Estate of Vance, 1932, 106 Pa.Super. 467, 162 A. 346. That this was a gift causa mortis cannot be questioned, for it may be inferred that Mrs. Armstrong believed she was likely to die soon and death did actually ensue within a reasonable time (13 days) thereafter. See Titusville Trust Co. v. Johnson, 1953, 375 Pa. 493, 494, 100 A.2d 93.

The major issue is whether or not Mrs. Duhart was competent to testify. It is clear that if the contest were solely between plaintiff and Mrs. Duhart, she would be incompetent to testify. Weaver v. Welsh, 1937, 325 Pa. 571, 191 A. 3; cf. Wright v. Wilson, 3 Cir., 1946, 154 F. 2d 616, 170 A.L.R. 1237. However, where plaintiff declares under two theories of action in one suit, Dennick v. Scheiwer, 1955, 381 Pa. 200, 113 A.2d 318, or, where actions arising out of the same transaction are consolidated, Thomas v. Roland, D.C.E.D.Pa.1958, 167 F.Supp. 622, so that, if such theories or actions were not joined, the survivor would be competent to testify under one

2. Also, it is hard to design a better set of circumstances in order to require the Government to pay twice, namely, the husband delaying in pressing his claim until the sister had been paid.

3. The only other evidence offered on this issue was by way of the deposition (Exhibit D-1) of a Miss McIver, who, on August 9 and 10, 1955, was an attendant of the Philadelphia General Hospital where Mrs. Armstrong was confined just before her death. Miss McIver's testimony alone would not sustain the gift, but, as she freely admitted, she was not present at all times when Mrs. Armstrong and Mrs. Duhart were together. See pp. 8–11 and 15–16 of Deposition of Miss McIver, Exhibit D-1.

theory or in one suit, but not in the other, the Pennsylvania courts and the federal courts interpreting the Pennsylvania rule have allowed the testimony. Also, where a plaintiff directed his suit against the defendant, who joined as a third party the estate of the deceased involved in the transaction, plaintiff was competent to testify as to conversations taking place between him and the deceased. Brubaker v. Berks County, 1955, 381 Pa. 157, 112 A.2d 620; McCaulif v. Griffith, 1933, 110 Pa.Super. 522, 168 A. 536. These holdings, though admittedly not directly on point, plus the factors that the Dead Man's Rule is being limited (see Judge Goodrich's comments in Wright v. Wilson, supra, 154 F.2d at page 620), and that this is a non-jury case (cf. Taylor v. Crain, 3 Cir., 1955, 224 F.2d 237, 240), lead the trial judge to conclude that Mrs. Duhart is competent to testify in a case such as this, where the defendant's defense rests on the testimony of another, especially in light of the policy of admissibility expressed in F.R.Civ.P. 43(a).

## III. Conclusions of Law

The trial judge makes the following Conclusions of Law:

1. The court has jurisdiction of this matter.

2. The deceased, Mrs. Armstrong, had no money on deposit in Postal Savings Account No. 12736 on January 23, 1956, the date of the acts complained of, since delivery to Mrs. Duhart of the check drawn on the United States Treasury on August 10, 1955, constituted payment of such sum on deposit.

3. The defendant, United States of America, is not liable to plaintiff for breach of any duty, as defined by the postal regulations, it may previously have owed to the deceased Mrs. Armstrong.

4. The defendant, United States of America, was not negligent in paying the money to Sarah Duhart.

The trial judge makes the following Conclusions of Law on the issue of whether or not there was a gift:

1. Sarah Duhart was a competent witness.

2. There was a gift of the money in Postal Savings Account No. 12736 on August 10, 1955, from Mrs. Armstrong to Mrs. Duhart and Mrs. Holmes.

3. The defendant, United States of America, through the Postal Savings System, violated no law or regulation in paying the money in the account to Mrs. Duhart after the death of Mrs. Armstrong and, therefore, is not liable to plaintiff.

4. The issues raised by the third-party complaint against Sarah Duhart and Carrie Holmes are moot as a result of the above-stated Conclusions of Law.

5. Any liability of the third-party defendants, Sarah Duhart and Carrie Holmes, to the plaintiff need not be determined by this action.[4]

### Order

And now, March 23, 1959, it is ordered that judgment be entered for the defendant, United States of America, and against the plaintiff, Henry Armstrong, administrator of the estate of Ella Armstrong, deceased.

4. It is to be noted that plaintiff did not serve an amended complaint against the third-party defendants. See 3 Moore's Federal Practice (2nd Ed. 1948), § 14.16, p. 441. While this court would treat the complaint as amended to include the third-party defendants in the original claim, if the evidence was adequate to prove their liability, it is clear that such would not be permitted where, as the record shows here, there is no diversity jurisdiction for plaintiff's claim against the third-party defendants. Patton v. Baltimore & O. R. Co., 3 Cir., 1952, 197 F.2d 732, 743–744; Sheppard v. Atlantic States Gas Co., 3 Cir., 1948, 167 F.2d 841, 844.