615 A.2d 367

H. Alfred SOLOMON, Jr.

v.

Bernard E. GIBSON, Janet E. Gibson–Yoder, Stephen G. Gibson, Mary Catherine Valentour, Catherine Valentour, John E. Valentour and Sarah Valentour, Betty G. Norris and Scott A. Norris, III.

Appeal of Henriette V. SOLOMON, Personal Representative of Estate of H. Alfred Solomon, Jr. and James G. Groninger, Administrator, D.B.N.C.T.A. of the Estate of Elizabeth R. Solomon.

Superior Court of Pennsylvania.

Argued Aug. 27, 1992.

Filed Oct. 20, 1992.

Scott S. Small, Pittsburgh, for appellants.

Michael J. Seymour, Bethel Park, Lynn E. MacBeth, Pittsburgh, for Valentour, appellees.

Frederick J. Francis, Pittsburgh, for appellee.

Before MONTEMURO, KELLY and BROSKY, JJ.

MONTEMURO, Judge:

This is an appeal from an order entered sustaining the demurrers of appellees' and dismissing appellant's complaint against appellees. On appeal, appellant raises the following issues:

(1) Whether the estates and trusts of which appellees are beneficiaries obtained money belonging to the estate for

which appellant serves as executor without giving valuable consideration; and

(2) Whether the knowledge of the appellees' agent or fiduciary should be imputed to the appellees?

For the reasons set forth below, we affirm.

Charles Thorp, III was the Co–Trustee of the Testamentary Trusts of Helen L. Gibson (Gibson Trusts A, B, and C), the Trustee of the Janet E. Gibson Trust, the Executor of the Estate of Elizabeth G. McCarnes, and the attorney of record for the Estates of Scott A. Norris, Jr. and Elizabeth R. Solomon. In his complaint, appellant avers that on or about December 21, 1988, Thorp withdrew $77,250 from Gibson Trust A and B and $37,000 from the Janet E. Gibson Trust. Appellant used and subsequently lost $110,000 of this money for his personal speculation in index options. The complaint also alleges that on November 5, 1987 and January 4, 1988, Thorp withdrew $20,000 and $36,000, respectively, from the Norris Estate. Appellant allegedly also used and subsequently lost this money for his personal speculation in index options. Finally, on May 12, 1988 and June 2, 1988, Thorp withdrew $210,000 and $64,000, respectively, from the McCarnes Estate. Again, appellant allegedly used and lost $250,000 of this money for the purchase of index options. Thorp's speculation in these options with the misappropriated funds was for Thorp's own personal benefit, and not for the estates from which the funds were taken. Appellees are beneficiaries of the various estate accounts described herein.

In order to cover up the fact that he lost the money belonging to the various estates described above, the complaint alleges that Thorp withdrew money from the Solomon estate and gave those sums to the various estates wherein appellees are beneficiaries. As a result, appellant brought an action for money had and received for these sums against the various appellees. Appellees filed preliminary objections in the nature of demurrers to appellant's complaint. Following argument, the trial court sustained appellees' demurrers. This appeal follows.

■■■ Our scope of review in an appeal from an order sustaining preliminary objections in the nature of a demurrer is plenary. *Kyle v. McNamara & Criste,* 506 Pa. 631, 487 A.2d 814 (1985). When reviewing such an order:

All material facts set forth in the Complaint as well as all inferences reasonably deducible therefrom are admitted as true for [the purpose of this review.] The question presented by the demurrer is whether on the facts averred the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Id.,* 506 Pa. at 634, 487 A.2d at 816 (citations omitted).

■■ Keeping these guidelines in mind, we now must decide whether appellant's complaint failed to state a claim upon which relief could be granted. A cause of action for money had and received entitles a party to relief where money is wrongfully diverted from its proper use and that money subsequently falls into the hands of a third person who has not given valuable consideration for it. *Brubaker v. County of Berks,* 381 Pa. 157, 112 A.2d 620 (1955). The cause of action fails, however, where the recipient of the money has given consideration in exchange for the funds and is unaware that the money was procured by fraudulent means. *Id.*

Under the Restatement of Restitution, the cause of action is defined as follows:

A person who, non-tortiously and without notice that another has the beneficial ownership of it, acquires property which it would not have been wrongful for him to acquire with notice of the facts and of which he is not a purchaser for value is, upon discovery of the facts, under a duty to account to the other for the direct product of the subject matter and the value of the use to him, if any, and in addition, to

a) return the subject matter in specie, if he has it;

b) pay its value to him, if he has non-tortiously consumed it in beneficial use;

c) pay its value or what he received therefor at his election, if he has disposed of it.

Restatement of Restitution § 123. *See also Transamerica Insurance Company v. Long,* 318 F.Supp. 156, 160 (W.D.Pa. 1970) (holding that once stolen money has been negotiated, the victim-owner, or one standing in his shoes, cannot recover a like amount from a third party recipient unless it can be proved that the recipient had prior knowledge that the money was stolen.)

In the instant case, the trial court found that when Thorp stole money from appellees' estates, it created a debt to these estates. Thereafter, when Thorp transferred appellant's money to appellees' estates, he was satisfying a pre-existing debt to appellees. Thus, the trial court found that since appellees gave consideration, i.e. the satisfaction of a pre-existing debt, for the money, appellant could not maintain a cause of action against appellees, who were without notice of Thorp's fraudulent activities. On appeal, appellant argues that the trial court erred in finding that appellees gave valuable consideration for the money that Thorp transferred to their estates because the transfer did not constitute the satisfaction of a pre-existing debt. We disagree.

Under the Restatement of Trusts Section 304:

If the trustee transfers trust property in consideration of the extinguishment in whole or in part of a pre-existing debt or other obligation, the transfer is for value if

a) the trust property transferred is a negotiable instrument or money.

Restatement of Trusts § 304(2). Likewise, in Pennsylvania, we have held that the cancellation of a valid pre-existing debt or other obligation constitutes value. *See Brubaker v. County of Berks, supra,* and *Transamerica Insurance Company v. Long, supra.* Appellant does not disagree with this proposition, but instead argues that the transfer of money from Thorp to appellees did not constitute the satisfaction of a pre-existing debt because, at the time of the transfer, appellees were not even aware of the debt. Thus, according to appellant, the transfer cannot constitute the cancellation of a debt because no intentional, advertent, bargained for transaction giving rise to a debt has taken place. As stated above,

however, to constitute value all that needs to be shown is that the transfer was done to satisfy a pre-existing debt or *other obligation.* As trustee to appellees' various estates, Thorp had a legal duty to distribute the estates' assets to the beneficiaries. When Thorp transferred the money to the estates and distributed the assets to the beneficiaries, he was satisfying his obligation to appellees. Having distributed the assets to the beneficiaries of the estates, Thorp satisfied his obligation to the estates, and thus value was given. Accordingly, appellees would be considered bona fide purchasers for value, and would be entitled to keep the misappropriated funds. *See George v. Richards,* 361 Pa. 278, 64 A.2d 811 (1949) (A transfer of trust property to a bona fide purchaser for value extinguishes the rights of beneficiaries in the property sold.) In fact, in the Restatement of Trusts, a situation very similar to the instant one is addressed in comment b of Section 279. Comment b provides:

> *Where beneficiary a bona fide purchaser.* The creditor cannot recover payment of his claim from the beneficiary personally if, when he received a conveyance of the trust property, the beneficiary was in the situation of a bona fide purchaser. *Thus, if the trustee misappropriates trust money and thereafter wrongfully takes the same amount of money belonging to a third person and deposits it in his account as trustee and subsequently pays it to the beneficiary, who receives it in satisfaction of his claim against the trustee without notice that the trustee had wrongfully obtained the money, the beneficiary is a bona fide purchaser of the money so paid and is under no liability to the third person.*

Restatement of Trusts § 279, comment b (emphasis added). Thus the trial court did not err in concluding that appellees, as bona fide purchasers for value, were entitled to retain the misappropriated funds.

Appellant also argues that in order for satisfaction of a pre-existing debt to constitute consideration, the debt must be advertent in nature. First we note, as stated above, that in the instant case Thorp, by distributing the funds to appellees,

was actually satisfying his obligation as trustee to appellees. Thus the distribution constituted an "other obligation" as provided for in Restatement of Trusts § 304. This case, however, could also be decided on the basis that the distribution of the money to appellees constituted the cancellation of a pre-existing *debt*. Simply because appellees were not aware of the original theft of their money by Thorp does not mean that Thorp did not owe appellees a debt. In *Brubaker, supra*, our Supreme Court dealt with a very similar issue. In that case, the plaintiff gave two checks totaling $7,000.00 to Moyer for the purchase of certain real estate. Moyer, who was county treasurer of Berks County, did not use the checks for the purpose intended but rather deposited them in his account as county treasurer. When Moyer's term ended, a settlement of his accounts as County treasurer showed them to be in balance. Moyer subsequently died without ever applying plaintiff's money to the real estate purchase. Plaintiff brought suit against Berks County seeking to recover the $7,000.00.

In rendering its decision, the Supreme Court made no distinction between advertent and inadvertent debts. Rather the court intimated to the fact that the return of stolen money constituted the satisfaction of a valid pre-existing debt. In order to retain the money, however, the court stated that the third party had the burden of proving that value was given for the money. In that situation, it was held that:

> The County failed to produce such proof, advancing only the supposition that Moyer might have owed the County $7000 before he deposited the checks and that, therefore, the County came into possession of the checks for value received. The County entertained also the supposition that Moyer might have extracted $7000 from the safe, leaving there in its place two checks. But the bridge of legal proof cannot be built on the phantom piers of supposition. *There was no evidence of any kind to give form and substance to these suppositions.*

*Id.* 381 Pa. at 160, 112 A.2d at 621–622.

Thus, only because Berks County could not prove that Moyer had actually embezzled or misappropriated County funds, the

county could not keep the funds. In so holding, the Supreme Court recognized that the return of previously stolen funds would constitute the satisfaction of a pre-existing debt, regardless of whether the transaction was advertent or inadvertent in nature [1].

Appellant cites to several cases from other jurisdictions in support of his assertions. We find, however, that these cases are not controlling and, in any event, distinguishable. First of all, *Atlantic Cotton Mills v. Indian Orchard Mills*, 147 Mass. 268, 17 N.E. 496 (1888), can be distinguished for the very reason appellant cites to George G. Bogert, *Trusts and Trustees*, (Rev. Second Ed.1982). In that case when the thief wrongfully transferred the plaintiff's funds to the defendants, he was doing so only to cover up his prior misappropriation. The thief never intended, nor attempted, to transfer title, but rather only wanted to be able to show the existence of the funds in the books to prevent discovery of his prior misappropriations. Before the thief was able to return the funds, however, he committed suicide. Thus, like the situation described in Bogert, this was merely a fictitious transaction or a "fictitious cancellation" of a debt. Since title was never actually transferred nor intended to be transferred to the defendants, they were not purchasers for value and could not retain the misappropriated funds.

Unlike the situation in *Atlantic Cotton Mills, supra,* however, Thorp intended to and actually transferred title to the funds. He meant for appellees to have the money in satisfaction of his obligation to them, and thus transferred the funds to them completely. It was not a mere fictitious transaction, and thus is distinguishable from the cases cited by appellant.

Appellant also cites to the case of *Newell v. Hadley*, 206 Mass. 335, 92 N.E. 507 (1910) in support of his position. Again, however, we find the case to be of no assistance to appellant's cause. In that case, as in the instant case, a

---

**1.** We recognize that this rule extrapolated from *Brubaker* is only dicta. However, it is not this holding alone which guides the outcome of this case. Taken together with the other authorities cited herein, we find the dismissal is clearly supported by the law.

trustee stole money from one trust to cover up a prior misappropriation in another trust. With the stolen money, the trustee directly paid some of the creditors of the trust for debts incurred by the trust. He also paid some of the money directly to the beneficiaries of the trust. The court held that the defendants had to return the amount of money that was paid to the creditors of the trust, but could retain the money paid directly to the beneficiaries. In making this determination, the court made a distinction between the actions of the trustee wherein he received the stolen money for the trust and then paid the creditors and wherein the innocent beneficiaries received the money for themselves. The court held that:

> In this connection it should be pointed out that there were payments made out of this $11,000 to the beneficiaries of the defendant trust and to [the trustee's] co-trustee. In receiving these payments the beneficiaries and the co-trustee did not act through [the trustee]. They acted for themselves. They are bona fide purchasers without notice of the money so paid to them, and the plaintiff's have no claim for the $612.45 so paid out.

206 Mass. at 348, 92 N.E. at 513. Thus, in this case, as in the above excerpt from the *Newell* case, since the money was paid directly to the beneficiaries, they were bona fide purchasers for value and are entitled to retain the money.

■■ Appellant's next argument is that the knowledge of appellee's agent or fiduciary that the money was stolen should be imputed to the appellees. It is true that

> a principal is liable to innocent third parties for the frauds, deceits, concealments, misrepresentations, torts, negligences and other malfeasances or misfeasances of his agent committed in the course of his employment, although the principal did not authorize, justify or participate in, or indeed know of, such misconduct, or even if he forbade the acts or disapproved of them.

*Aiello v. Ed Saxe Real Estate, Inc.*, 508 Pa. 553, 559, 499 A.2d 282, 287 (1985). However, in a case such as this, where the

> agent acts in his own interest which is antagonistic to that of his principal, or commits a fraud for his own benefit in a

matter which is beyond the scope of his actual or apparent authority or employment, the principal who has received no benefit therefrom will not be liable for the agent's tortious act.

*Todd v. Skelly*, 384 Pa. 423, 429, 120 A.2d 906, 909 (1956). Additionally, as the trial court pointed out, comment j and Illustration 13 to Section 282 of the Restatement of Agency are applicable in the instant case. This comment and Illustration provide:

(j) *the Principal as a bona fide purchaser.* If the principal obtains title to property because of the independent fraud of his agent, he may still be a bona fide purchaser if, without knowledge of the fraud, he pays value to the agent or to another. Thus, as stated in § 279, if he deals with the agent as an adverse party and receives as a purchaser or property which the agent had obtained by fraud, he may keep it. So, if an agent having embezzled from his principal has replaced the embezzled funds with others which he has stolen, the principal is protected if, with or without knowledge of the embezzlement, he settles accounts with the agent.

Illustration 13. A is the Treasurer of the town of P and also Treasurer of the T Corporation. He has abstracted from the town funds and, to prevent discovery, he steals money from T and puts it into the town's treasury. A's accounts with the town are approved by the proper authorities and his bond as town treasurer is cancelled. The town is not affected by A's knowledge that the money in question was stolen from T.

Thus, since Thorp's actions were outside of the scope of his duties and his interest was plainly independent of appellees' interests, his actions will not be imputed to appellees.

Order affirmed.