J-A08016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MARY BETH SPUHLER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY | |
| Appellee | No. 911 MDA 2014 |

Appeal from the Order Entered April 28, 2014
In the Court of Common Pleas of Cumberland County
Civil Division at No.: 2013-02696

BEFORE: SHOGAN, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.:                  **FILED OCTOBER 01, 2015**

Mary Beth Spuhler appeals from the trial court's April 28, 2014 order sustaining the preliminary objections of Massachusetts Mutual Life Insurance Company ("MMLIC"), MML Investor Services ("MMLIS"), Connecticut Mutual Life Insurance Company ("CMLIC"), and Matthew J. Dobbie d/b/a/ uFinancial Group ("Dobbie") and dismissing Spuhler's amended complaint. For the reasons that follow, we reverse.

The trial court set forth the following factual and procedural history:

[Spuhler] is an adult individual residing at 422 Deerfield Road, Camp Hill, PA 17011. [Spuhler] is licensed to sell securities, retirement plans, insurance, and other financial products. As part of this occupation, [Spuhler] entered into a Career Contract with Dobbie on January 2, 2008. Under the Career Contract,

---

[*]     Retired Senior Judge assigned to the Superior Court.

[Spuhler] would serve under Dobbie, who is a general agent for MMLIC, as an insurance sales agent for MMLIC and CMLIC. The Career Contract contained the terms of the relationship. Similarly, [Spuhler] entered into a Representative's Agreement whereby [Spuhler] was registered to sell securities for MMLIS. During the course of their relationship, [Spuhler] maintained an office within Dobbie's headquarters, located in Camp Hill, Pennsylvania.

Louis F. Grammes (hereinafter, "Grammes") was also an agent with Dobbie. [Spuhler] avers that Grammes was Dobbie's top-producing life insurance agent. [Spuhler] and Grammes had an oral agreement that they would split the commissions resulting from new clients that they secured jointly. [Spuhler] alleges that she would develop leads and Grammes would act as the closer. On January 23, 2011, [Spuhler] discovered that Grammes had written a life insurance policy for a principal of one of their joint clients as to which he would receive all of the commissions, a violation of their oral agreement. Subsequently, [Spuhler] discovered that there were other instances where Grammes directed 100% of the commission from joint clients to himself. [Spuhler] believes that the value of these converted commissions is in excess of $20,000.

Between January and August of 2011, [Spuhler] confronted Grammes several times regarding the violations of their agreement. Subsequently, on July 22, 2011, Dobbie informed [Spuhler] that she would no longer be allowed to work from Dobbie's office due to her dispute with Grammes. As a result, [Spuhler] had to remove her personal belongings and files and establish a new office, which she believes to be a violation of her Career Contract.

[Spuhler] further avers that, nearly a year after being told to leave Dobbie's office, she received a letter from Dobbie terminating her employment relationship with him, MMLIC, CMLIC, and MMLIS. The termination letter alleged that [Spuhler] had engaged in "selling away"[1] as well as other unspecified non-compliance and misbehavior. Within two hours

---

[1] Spuhler's amended complaint explains that "selling away" refers to the sale of financial products not submitted to MMLIS. *See* Spuhler's Amended Complaint, 8/22/2013, at 7.

of receiving the termination letter, [Spuhler] claims that she sent Dobbie documents proving that she did not engage in selling away. [Spuhler] contends that the selling away allegations are damaging to her career. [Spuhler] sought, without success, to affiliate with another Massachusetts Mutual agency so that she [c]ould continue to collect renewal commissions on existing sales and make new sales.

Notwithstanding [Spuhler's] assertion that she provided Dobbie with proof that the selling away allegations were unfounded, Dobbie initially did nothing. Dobbie eventually issued a backdated termination letter that did not contain allegations of selling away after [Spuhler's] attorney threated MMLIC's chief counsel with litigation. Nonetheless, [Spuhler] has been unsuccessful in securing employment with another Mass Mutual agency. [Spuhler] avers that a Mass Mutual agency in Philadelphia wanted to hire her, but the MMLIS home offices directed the agency not to hire her because their database lists [Spuhler] as "do not hire." [Spuhler] avers that the do not hire designation was per Dobbie's direction and that no independent investigation took place to confirm any allegations.

Trial Court Opinion ("T.C.O."), 4/28/2014, at 2-4 (record citations omitted).

On May 13, 2013, Spuhler filed a complaint against MMLIC, CMLIC, MMLIS, and Dobbie (collectively "Appellees"). Thereafter, Appellees filed preliminary objections. On August 22, 2013, Spuhler filed an amended complaint, which consisted of seven counts: breach of contract, conversion, civil conspiracy, unjust enrichment, breach of fiduciary duty, and two counts of tortious interference with business relations. The Appellees again filed preliminary objections. On March 21, 2014, Spuhler filed a motion for leave to file a second amended complaint.

On April 28, 2014, the trial court sustained Appellees' preliminary objections in the nature of a demurrer, dismissing Spuhler's amended complaint. Specifically, the trial court held that: (1) Spuhler's breach of

contract claim failed as a matter of law because she was classified as an independent contractor and, therefore, could be terminated at will; (2) the existence of a written contract between the parties precluded Spuhler from asserting a claim for unjust enrichment; and (3) all of Spuhler's other claims were barred by the gist of the action doctrine. The trial court's April 28, 2014 order also dismissed as moot Spuhler's motion for leave to amend her complaint. Spuhler timely appealed.[2]

Spuhler presents six issues for our review:

1. Whether the trial court committed reversible error and abused its discretion in sustaining preliminary objections in the nature of demurrers and dismissing the complaint without allowing for leave to amend?

2. Whether the trial court committed reversible error and abused its discretion in sustaining preliminary objections in the nature of demurrers and dismissing the complaint without giving any consideration to a pending motion for leave to file [a] Second Amended Complaint?

3. Whether the facts and allegations of the complaint, together with inferences deducible therefrom, adequately state a claim for breach of contract?

4. Whether the trial court wrongfully dismissed the complaint on the basis that no breach of duty claim could survive termination of the at will employment contract?

5. Whether the trial court improperly dismissed the alternative claim for unjust enrichment?

---

[2] The trial court did not order, and Spuhler did not file, a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

> 6. Whether the trial court committed reversible error in dismissing the tort claims based on the gist of the action doctrine?

Spuhler's Brief at 5-6 (numbering modified for clarity).

The scope of our review of an order sustaining preliminary objections is plenary. *Solomon v. Gibson*, 615 A.2d 367, 368 (Pa. Super. 1992). "In reviewing the grant of a demurrer, we are not bound by the inferences drawn by the trial court nor are we bound by its conclusions of law. Moreover, the novelty of a claim or theory, alone, does not compel affirmance of a demurrer." *Neff v. Lasso*, 555 A.2d 1304, 1305 (Pa. Super. 1989).

> Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

*De Lage Landen Fin'l Servs., Inc., v. Urban P'ship, LLC*, 903 A.2d 586, 589 (Pa. Super. 2006). "Preliminary objections, the end result of which would be dismissal of a cause of action, should be sustained only in cases that are clear and free from doubt." *Bower v. Bower*, 611 A.2d 181, 182 (Pa. 1992).

> A demurrer admits as true all well-pleaded facts and all inferences reasonably deducible from them, but not any conclusions of law. Only if upon the facts averred, the law says with certainty that no recovery is permitted will this Court sustain the demurrer. Where a doubt exists as to whether a demurrer should be sustained, this should be resolved in favor of overruling it.

***Buchanan v. Brentwood Fed. Sav. & Loan Ass'n***, 320 A.2d 117, 120 (Pa. 1974) (citations and internal quotation marks omitted); ***Stahl v. First Penna. Banking & Trust Co.***, 191 A.2d 386, 389 (Pa. 1963).

In her first and second issues, Spuhler argues that the trial court erred in dismissing her amended complaint without granting leave to amend, despite her pending motion requesting the same. Because we reverse the trial court's order sustaining Appellees' preliminary objections, we need not consider whether the trial court erred in issuing that order without first granting Spuhler's motion for leave to amend her complaint.

Spuhler's third and fourth issues challenge the trial court's dismissal of her breach of contract claim (Count I of Spuhler's amended complaint) as to all Appellees. In sustaining the Appellees' demurrers on this count, the trial court reasoned that Spuhler had failed to state a claim for breach of contract because, "[a]s a general rule, there is no common[-]law cause of action against an employer for termination of an at-will employment relationship." T.C.O. at 5 (citation omitted). The court further reasoned that, because the contracts at issue unambiguously provided that either party could terminate the employment relationship at any time, with or without cause, "it cannot be claimed that the [Appellees] breached a duty imposed by the contract." ***Id.*** at 6.

> A cause of action for breach of contract must be established by pleading (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages. ***See Gen. State Auth. v. Coleman Cable & Wire Co.***, 365 A.2d 1347, 1349 (Pa. Cmwlth. 1976). While

not every term of a contract must be stated in complete detail, every element must be specifically pleaded.

***CoreStates Bank, N.A. v. Cutillo***, 723 A.2d 1053, 1058 (Pa. Super. 1999) (citations modified).

In her amended complaint, Spuhler averred that Dobbie breached the career contract when, *inter alia*, he "sought to take control of the client base that Spuhler had spent decades developing." **See** Spuhler's Amended Complaint, 8/22/2013, at 9. Spuhler maintained that Appellees "materially breached the contracts by refusing to allow Spuhler to affiliate with another of its general agents, and thereby continue to service her existing clients and draw commissions from their accounts[] and sell additional Mass Mutual products to new clients." **Id.** Spuhler also alleged that Appellees breached the career contract when they required her to "return her key to the office, remove all files and materials from [Dobbie's] office, and set up her own private office from which she could continue to serve as a Mass Mutual/uFinancial agent." **Id.** at 6. Finally, Spuhler pleaded that, as a result of Appellees' breaches, she was deprived of "hundreds of thousands of dollars in commissions." **Id.** at 10.

Because Spuhler pleaded the essential terms of the agreement, a breach, and damages, she set forth a legally sufficient claim for breach of contract. Although the agreement provided that either party could terminate the contract, with or without cause, it also imposed additional rights and duties, some of which survived the termination of Spuhler's

employment as an insurance sales agent. *See e.g., id.* Exh. A at ¶ 5 (providing for the payment of vested renewal commissions after termination of the career contract). A fair reading of Spuhler's amended complaint reveals breach of contract allegations that extend beyond the assertion that Dobbie wrongfully terminated Spuhler's career contract. The trial court erred in reading Spuhler's amended complaint so narrowly that it concluded otherwise.

Spuhler's fifth issue challenges the trial court's dismissal of her claim for unjust enrichment, which she asserted against all defendants. "To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain." *Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. Super. 1985). A claim for unjust enrichment arises from a quasi-contract. "A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another." *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. 2001).

> The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. Whether the doctrine applies depends on the unique factual circumstances of each case. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

- 8 -

> Moreover, the most significant element of the doctrine is whether the enrichment of the defendant is *unjust.*

***Stoeckinger v. Presidential Fin. Corp. of Delaware Valley***, 948 A.2d 828, 833 (Pa. Super. 2008) (emphasis in original).

Instantly, Spuhler's amended complaint alleged that Dobbie was unjustly enriched by his "hijacking" of Spuhler's clients and commission streams. **See** Spuhler's Amended Complaint, 8/22/2013, at 8, 13. According to Spuhler, "Dobbie appreciated the benefit of his acquisition of [her] clients and commission streams," which Spuhler estimated to be worth "hundreds of thousands of dollars." **Id.** at 10, 13. Nevertheless, the trial court held that Spuhler had failed to state a viable claim for unjust enrichment because "it is manifest that the relationship between [Spuhler] and Dobbie was governed by a written contract." T.C.O. at 9. The court cited ***Wilson Area School District v. Skepton***, for the well established proposition that "the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract. . . ." 895 A.2d 1250 (Pa. 2006).

Spuhler argues that the Pennsylvania Rules of Civil Procedure specifically authorize a party to allege separate claims in the alternative. **See** Spuhler's Brief at 36 (citing Pa.R.C.P. 1020(c)). Although Spuhler concedes that a plaintiff may not recover for both unjust enrichment and breach of contract, she nevertheless maintains that such claims may be pleaded in the alternative. **Id.** at 38. We agree.

Spuhler was free to plead unjust enrichment as an alternative theory of liability. Such a claim provides a basis for recovery if Spuhler's career contract with Dobbie is found to be unenforceable, or in the event that the issue of Spuhler's right to continuing commissions following her termination falls outside of the scope of the contract.

This court has previously rejected the argument that a cause of action for breach of contract cannot be pleaded in the alternative with a claim for unjust enrichment because the former is predicated upon the existence of an express contract while the latter is predicated upon the non-existence of an express contract. *See Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 969-70 (Pa. Super. 2009) (holding that "appellee's argument confuses the bar against recovering under both causes of action with a notion that pleading both causes of actions is also prohibited"). Indeed, we have held that a subcontractor can recover based upon unjust enrichment when it performed work outside of the scope of the parties' contractual provisions. *See Ruthrauff, Inc. v. Ravin, Inc.*, 914 A.2d 880 (Pa. Super. 2006) (noting that the plaintiff asserted a "claim for unjust enrichment for work it performed outside any promises made in the written contractual documents"). Accordingly, the trial court erred in sustaining Appellees' preliminary objection to Count VI and dismissing Spuhler's unjust enrichment claims.

In her final issue, Spuhler argues that the trial court committed reversible error in dismissing her tort claims based upon the gist of the

action doctrine. The trial court—finding that Spuhler merely had reframed her ordinary breach of contract claims into tort claims—dismissed Counts III through V, and VII of Spuhler's amended complaint, wherein she asserted claims for tortious interference with business relations, conversion, civil conspiracy, and breach of fiduciary duty against both Dobbie and the Mass Mutual defendants. Specifically, the trial court reasoned that, because all of Spuhler's tort claims arose out of her employment contract, they were barred by the gist of the action doctrine. *See* T.C.O. at 8.

"The gist of the action doctrine bars a plaintiff from re-casting ordinary breach of contract claims into tort claims." *Mirizio v. Joseph*, 4 A.3d 1073, 1079 (Pa. Super. 2010) (citation omitted). This court has explained the doctrine as follows:

> Although they derive from a common origin, distinct differences between civil actions for tort and contract breach have developed at common law. Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals. . . . To permit a promisee to sue his promisor in tort for breaches of contract *inter se* would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions.

*Id.* (quoting *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002)). The gist of the action doctrine does not preclude an action in tort simply because it resulted from a breach of a contract. "To be construed as in tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral." *Id.* at 1080.

- 11 -

The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus. In other words, a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.

*Id.* (citation omitted).

Recently, our Supreme Court approved of the above articulation of the gist of the action doctrine.

If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—*i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort. *See Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 885 (Pa. 2007) (holding that action against insurer for bad[-]faith conduct pursuant to 42 Pa.C.S. § 8371 is for breach of a duty "imposed by law as a matter of social policy, rather than one imposed by mutual consensus"; thus, action is in tort); *see also* W. Page Keeton, *Prosser & Keeton on Torts* 656 (5th ed. 1984) (reviewing extant case law, and noting the division therein between actions in tort and contract based on the nature of the obligation involved, observing that "[t]ort obligations are in general obligations that are imposed by law on policy considerations to avoid some kind of loss to others . . . [which are] independent of promises made and therefore apart from any manifested intention of parties to a contract, or other bargaining transaction"). Although this duty-based demarcation was first recognized by our Court over a century and a half ago, it remains sound, as evidenced by the fact that it is currently employed by the high Courts of the majority of our sister jurisdictions to differentiate between tort and contract actions. We, therefore, reaffirm its applicability as the touchstone standard for ascertaining the true gist or gravamen of a claim pled by a plaintiff in a civil complaint.

- 12 -

* * * *

> [T]he mere existence of a contract between two parties does not, *ipso facto*, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract.

***Bruno v. Erie Ins. Co.***, 106 A.3d 48, 68-69 (Pa. 2014) (some citations omitted, others modified; footnotes omitted).

Viewing the facts contained in Spuhler's amended complaint as true—as our standard of review requires—the gist of the action doctrine does not bar Spuhler's tort claims. As set forth above, Spuhler's amended complaint alleged that, prior to informing her that she was being terminated as a uFinancial insurance sales agent, Dobbie sent letters to Spuhler's clients telling them that Spuhler was no longer affiliated with uFinancial, and that Spuhler's existing accounts would be reassigned to another agent. ***See*** Spuhler's Amended Complaint, 8/22/2013, at 7. Spuhler also alleged that Dobbie prevented her from accessing her client files. ***Id.*** at 8. Finally, Spuhler alleged that she was unable to obtain a broker contract with another Mass Mutual agent, because MMLIS, at Dobbie's direction, had assigned Spuhler a "do not rehire" designation in its database. ***Id.*** As a result, Spuhler was unable to collect any renewal commissions on her existing policies, and the insurance portfolio that she had built throughout her decades-long career was substantially devalued. ***Id.***

Spuhler asserted claims for tortious interference with business relations, conversion, civil conspiracy, and breach of fiduciary duty based

upon the above facts. These are not claims for breach of contract masquerading as tort claims. As in **Bruno**, *supra*, the gist of the action on these averments lies in tort, and the contract is collateral to the matters alleged. **Compare Mirizio**, 4 A.3d at 1079-80. It was not Spuhler's career contract *per se* that created a duty not to deprive Spuhler of possession of her property or to interfere with her prospective business relations; it is the law itself that imposes those duties. **See Bruno**, 106 A.3d at 70. Accordingly, the trial court erred in granting Appellees' preliminary objections as to Counts III through V and Count VII. The gist of the action doctrine did not warrant the dismissal of Spuhler's tort claims.

For the foregoing reasons, we reverse the order granting appellees' preliminary objections and dismissing Spuhler's amended complaint.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/1/2015