Nardella v. Dattilo (No. 2)

C.P. of Dauphin County, nos. 1678 S 1994 and 2570 S 1994.

*Howard B. Krug,* for plaintiffs.
*F. Lee Shipman, Philip J. Murren* and *Terrence J. Kerwin,* for defendants.

*EN BANC,* TURGEON, HOOVER AND CLARK, *JJ.*

CLARK, *J.,* March 21, 1997—Before the court are two sets of preliminary objections in the nature of a demurrer which have been filed on behalf of defendant, Robert Peregrin, and collectively, defendants, Bishop Nicholas C. Dattilo, the Roman Catholic Diocese of Harrisburg, the Church of the Good Shepherd, Monsignor William Richardson and Father Paul Helwig, defendants of the diocese. Oral argument on these objections was heard by an en banc panel of this court on May 24, 1996. After due consideration of the arguments presented, the preliminary objections are denied in part and granted in part. The demurrers to Counts VI[1] and VII are granted. Whereas, the demurrers to

---

1. Judge Turgeon files a dissenting opinion with regard to Count VI.

Counts I, II, III, IV, V, VIII, IX, X, XI, XII and XIII are denied for the reasons set forth herein.

In ruling on an objection in the nature of a demurrer, the material facts set forth in the complaint and all inferences reasonably deducible therefrom must be admitted as true. *Smith v. Weaver,* 445 Pa. Super. 461, 665 A.2d 1215 (1995). The court must determine from the facts averred whether the law says with certainty that no recovery is possible. *Id;* see also, *Lampus v. Lampus,* 541 Pa. 67, 660 A.2d 1308 (1995). If the complaint pleads sufficient facts which, if believed, would entitle the petitioner to relief under any theory of law, then the demurrer shall be overruled. *Wilkinsburg Police Officers Association By and Through Harder v. Commonwealth,* 535 Pa. 425, 636 A.2d 134 (1993); *Smith, supra.* However, a demurrer shall be sustained in cases which are clear and free from doubt. *Bower v. Bower,* 531 Pa. 54, 611 A.2d 181 (1992).

## I. FACTS

Plaintiff alleges the following facts give rise to her cause of action. During the events that led up to this lawsuit, Peregrin was employed as a Catholic priest at the Good Shepherd Church in Camp Hill, Pennsylvania. Plaintiff, Aileen Nardella, first came into contact with Peregrin when she requested that the church provide her mother with a priest to assist her in preparing for death. In response to her request, Peregrin administered last rites to plaintiff's mother and also handled her burial services. He then began to counsel plaintiff to aid her in coping with the loss, and also to facilitate her return to the Catholic Church.

During the months of May and June 1990, Peregrin and plaintiff met once a week for counseling sessions, throughout which time they developed a sexual rela-

tionship. These sessions took place on property owned or controlled by the church. In an attempt to handle the physical nature of the relationship, plaintiff would assume an alternative personality to disassociate her from the acts as they were occurring. Peregrin consistently assured plaintiff that he could be trusted by her and would never cause her harm. Despite these assurances, plaintiff finally insisted that the sexual relationship must end. Peregrin then informed her that he had previously been physically involved with females at other parishes.

Sometime thereafter, plaintiff's difficulty in accepting the relationship became apparent to Peregrin so he suggested that she contact Monsignor Richardson,[2] who was already aware of the existence of their involvement. Plaintiff followed Peregrin's suggestion and met with Richardson to discuss her concerns about the nature of the relationship and the effect it was having upon her state of mind. During the meeting, Richardson confirmed his awareness of Peregrin's previous sexual conduct with females at other parishes. He recommended that plaintiff cease all contact with Peregrin and attend a different church.

In April 1992, plaintiff was receiving treatment for severe emotional problems at the Harrisburg Institute of Psychiatry. Peregrin was aware of the treatment, but continued to make sexual advances towards her. He voiced his concerns over the subject matter that

2. At all times relevant hereto, Monsignor William Richardson was the individual counselor and spiritual director to defendant, Robert Peregrin. He was also the general secretary of the Good Shepherd Church and trustee of the Harrisburg Roman Catholic Diocese and the Roman Catholic congregation at the church. His primary responsibility was to oversee and resolve problems associated with alleged clergy misconduct.

she was disclosing to her psychiatric counselors and attempted to prevent her from discussing his relationship with her during her treatment. Ultimately, in December 1992, the sexual relationship dissolved when Peregrin was transferred to another parish. However, prior to his departure, he notified plaintiff of his new address and telephone number, along with his desire to continue their relationship.

In January of 1993, plaintiff was admitted to the Northwestern Institute for treatment of her multiple personality disorder. During her hospitalization, she contacted Peregrin to advise him that she was receiving treatment. At this time, Peregrin tried to arrange a meeting alone with plaintiff for the purpose of showing her his new parish.

A few months later, plaintiff and her psychiatric counselor attended a meeting with Father Helwig [3] and advised him of the sexual relationship between plaintiff and Peregrin. Thereafter, Peregrin and Helwig acknowledged[4] Peregrin's sexual involvement with plaintiff. Plaintiff filed a 13-count complaint on January 31, 1996 to which defendants filed two separate sets of preliminary objections. For purposes of our discussion, we will first address the objections raised solely by Peregrin. Thereafter, we will consider those objections raised ex-

3. At all times relevant hereto, the Reverend Paul Helwig was the director for clergy and religious life for the Catholic Diocese of Harrisburg. He was responsible for assisting Monsignor Richardson and Bishop Dattilo in handling allegations of clergy misconduct.

4. At this time, the manner in which Peregrin and Helwig "acknowledged" the sexual relationship between plaintiff and Peregrin is unclear. However, for the purpose of our analysis, it shall be construed to mean that Helwig was aware of the relationship to impute knowledge of it to the diocese. Plaintiff shall have the burden to prove this contention by a preponderance of the evidence at trial.

clusively by defendants of the diocese. Finally, we will address the remaining objections that are similar in nature.

## II. DISCUSSION

### A. *Preliminary Objections of Defendant, Robert Peregrin*

Peregrin has individually raised five preliminary objections. First, he objects to Count I of the complaint on the grounds that plaintiff failed to state a cause of action for assault. Pursuant to the Restatement (Second) of Torts §21(1) an actor may be held liable for assault if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

"(b) the other is thereby put in such imminent apprehension." See also, *Sides v. Cleland,* 436 Pa. Super. 618, 648 A.2d 793 (1994).

A review of the complaint indicates that plaintiff successfully pleaded the elements of assault. In paragraph 70, it is alleged that Peregrin, "in his capacity as a priest, acted with the intent to cause harm and/or offensive contact to [plaintiff] and thereby put her in imminent apprehension." Paragraph 69 incorporates the complaint's preceding paragraphs which specifically describe the relevant acts Peregrin committed against plaintiff.

Since consent is an affirmative defense and not an element of assault, plaintiff is not required to plead that the relationship was nonconsensual or the consent was invalid. *Quinn v. Limited Express Inc.,* 715 F. Supp. 127 (W.D. Pa. 1989); Summ. Pa. Jur. 2d §11:10. Nevertheless, paragraph 72 of the complaint avers that plain-

tiff's consent, "secured through fraud, deception and overwhelming undue influence was void." Therefore, all of the elements to support a claim for assault have been alleged, thereby requiring a denial of Peregrin's demurrer to Count I.

Peregrin next objects to Count II of the complaint on the basis that plaintiff failed to assert the requisite elements to sustain a cause of action for battery. In accordance with the Restatement (Second) of Torts §13, an actor commits a battery if: "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

"(b) a harmful contact with the person of the other directly or indirectly results."

A comparison of the elements necessary to establish actions for assault and battery indicates that both actions require an act intending to cause a harmful or offensive contact with another person, or an imminent apprehension of such a contact. Unlike assault, however, an actor must achieve harmful or offensive contact with another person to commit a battery. *Id;* see also, *Field v. Philadelphia Electric Co.,* 388 Pa. Super. 400, 565 A.2d 1170 (1989). In Count II of plaintiff's complaint at paragraph 77 it is averred that Peregrin, as plaintiff's priest, "did commit harmful and offensive touching of [plaintiff] with the intent to cause such harm or offensive contact." The particular acts of touching are described in paragraphs 1 through 68 of the complaint which have been fully incorporated within Count II. (Complaint, ¶76.) Accordingly, plaintiff has sufficiently alleged an action for battery.

As previously discussed in relation to an assault, consent is an affirmative defense to a battery, as opposed to an element thereof. Thus, plaintiff need not plead

that the relationship was nonconsensual or consent was fraudulently induced. However, plaintiff further alleges that any consent obtained is void since it was "secured through fraud, deception and overwhelming undue influence." (Complaint, ¶79.) Since an action for battery has been properly pleaded, Peregrin's objection to Count II is denied.

Peregrin also argues that plaintiff failed to establish the elements of fraudulent misrepresentation in Count IV of the complaint. To assert an action for fraud, plaintiff must plead the following:

(1) misrepresentation;

(2) fraudulent utterance thereof;

(3) intention by· maker to induce recipient;

(4) justifiable reliance on misrepresentation by recipient;

(5) damage to recipient as a proximate result of misrepresentation. See *Bash v. Bell Telephone Co. of Pa.,* 411 Pa. Super. 347, 358-59, 601 A.2d 825, 831 (1992); *Sevin v. Kelshaw,* 417 Pa. Super. 1, 9, 611 A.2d 1232, 1236 (1992); *Brindle v. West Allegheny Hospital,* 406 Pa. Super. 572, 574, 594 A.2d 766, 768 (1991).

In Count IV, plaintiff avers all of the foregoing elements by first pleading that Peregrin misrepresented to her that "he would never harm or betray her." (Complaint, ¶95.) Second, the representations were alleged to be fraudulently uttered since they were "knowingly false, misleading and with conscious disregard for his true intentions." (Complaint, ¶96.) Third, plaintiff avers that Peregrin intended to induce her into engaging in a sexual relationship with him to satisfy his own desires. (Complaint, ¶¶97, 99.) Fourth, plaintiff contends that she justifiably relied on Peregrin's representations and lastly, was mentally, physically and financially damaged

as a result thereof. (Complaint, ¶¶100, 103.) Thus, plaintiff's claim for fraudulent misrepresentation has been sufficiently pleaded to withstand Peregrin's demurrer.

Peregrin demurs to Count VI of the complaint and contends that plaintiff cannot state a cause of action against him for negligence. He argues that plaintiff is attempting to assert a claim for professional negligence which, in essence, is a claim for clergy malpractice. To date, the Pennsylvania appellate courts have failed to recognize a malpractice claim against a clergy member. Peregrin contends the First Amendment to the United States Constitution and Article I, Section 3 of the Pennsylvania Constitution prohibit the courts from exercising their powers over matters which are religious in nature.

To successfully establish a claim of professional negligence, plaintiff must allege Peregrin owed her a duty, the duty was breached and as a result thereof, plaintiff was injured. In order to show that Peregrin breached his duty, plaintiff must establish a standard of care for Catholic priests. In setting that standard, Peregrin maintains experts with a knowledge of the priesthood must testify about the practices and procedures typically demonstrated by competent clergymen involved in counseling members of the Catholic church.

Due to the necessity of establishing a professional standard of care, courts throughout the country have been reluctant to allow claims of clergy malpractice to go forward. *Dausch v. Rykse,* 52 F.3d 1425 (7th Cir. 1994); *Destafano v. Grabrian,* 763 P.2d 275 (Colo. 1993); *Schmidt v. Bishop,* 779 F. Supp. 321 (S.D.N.Y. 1991); *Schieffer v. Catholic Archdiocese of Omaha,* 508 N.W.2d 907 (Neb. 1993); *Blanden v. First Presbyterian Church,* 857 P.2d 789 (Okla. 1993); *Podolinski v. Episcopal Diocese of Pittsburgh,* 23 D.&C.4th 385 (Arm-

strong C.P. 1995). Difficulties arise because the party pursuing the claim would need to elicit testimony from church personnel to define the standard of professionalism to which priests or clergy should be held accountable. Other courts have reasoned that by allowing this type of testimony, the court would be delving into matters within the sole province of the church. They have concluded that the standard by which a priest's conduct is measured and any resulting disciplinary actions are best defined and implemented by church officials.

Absent appellate authority in this Commonwealth,[5] we will look to a case decided by a neighboring court of competent jurisdiction.[6] In *Podolinski v. Episocopal Diocese of Pittsburgh,* 23 D.&C.4th 385 (1995), the Court of Common Pleas of Armstrong County was presented with a set of facts and issues similar to those before this court. The plaintiff had initially begun to

---

5. At the time of this decision, it appears that there is only one reported Pennsylvania appellate decision that discusses a claim for clergy malpractice. In *E.J.M. v. Archdiocese of Philadelphia,* 424 Pa. Super. 449, 453 n.1, 622 A.2d 1388, 1390 n.1 (1993), the Superior Court briefly noted, without discussion, that the trial court dismissed plaintiff's count alleging clergy malpractice for failure to state a cause of action.

6. In *Fisher v. Western Pennsylvania Annual Conference of the United Methodist Church,* 23 Crawford County Legal Journal 334 (1993), a counseling relationship between a reverend and his parishioner evolved into a sexual relationship which ultimately led to marriage. The husband and children of the parishioner filed suit against the reverend alleging various causes of action, including clergy malpractice. The Court of Common Pleas of Crawford County refused to allow plaintiffs to proceed on this claim since the establishment of a duty of care to govern a pastor-parishioner relationship would violate the free exercise clause and the establishment clause of the U.S. Constitution.

see an Episcopal priest for spiritual guidance and counseling. During the counseling sessions, the parties entered into a sexual relationship, which was eventually discontinued by the plaintiff. A complaint was filed alleging causes of action against the priest for negligence, breach of fiduciary duty, intentional infliction of emotional distress, loss of consortium and punitive damages.

The Episcopal priest demurred to the negligence count. In ruling on the demurrer, the court similarly needed to determine if the proposed state action[7] violated the First Amendment to the Constitution of the United States. The court relied upon a test set forth by the United States Supreme Court in *Lemon v. Kurtzman,* 403 U.S. 602, 29 L.Ed.2d 745 (1971). Under the test, if the following conditions are met, then no First Amendment violation has occurred:

"(1) The purpose of the action must be clearly secular;

"(2) The primary effect of the action must neither enhance nor inhibit religion; and

"(3) The activity must not result in excessive state entanglement with religion."

In *Podolinski,* the court was primarily concerned with the third factor of the test. The court believed that it would become excessively entangled with religious issues if it were to entertain a claim for clergy malpractice. *Podolinski, supra* at 393. In reaching its conclusion, the court identified three events, during a jury trial, which would require it to examine and apply religious doctrine. First, the court focused on plaintiff's need to produce an expert witness who was well acquainted with the role, duties and function of the clergy. The

---

7. "A jury trial is a 'state action.' " *Podolinski, supra* at 393 n.3.

expert would need to testify as to whether the priest exercised "ordinary skill, knowledge, and judgment," during his counseling of plaintiff. Second, the court expressed concern over its charge to the jury, which would need to include a definition of clergy malpractice. Also, the court would be required to inform the jurors that the priest was under a duty to exercise the skill, knowledge and judgment ordinarily exercised by counseling Episcopal priests. Third, the court had reservations in allowing the jury to determine the standard of care to which a priest should be held and decide, with the full authority of the state to enforce, whether the priest met that standard in his conduct with plaintiff. The court ended its analysis by indicating that the aforementioned decisions and actions are exactly those in which the "state should not become entangled under the First Amendment as interpreted in *Lemon v. Kurtzman." Id.*

Based on the First Amendment to the United States Constitution and Article I, Section 3 of the Pennsylvania Constitution, along with the lack of authority present in Pennsylvania and other jurisdictions, this court is reluctant to recognize clergy malpractice as a viable cause of action. Therefore, Peregrin's objection is granted and Count VI of the complaint is dismissed.[8]

Finally, Peregrin objects to Count VII of the complaint on the basis that plaintiff failed to state a claim under the Civil Rights Remedies for Gender-Motivated Violence Act, 42 U.S.C. Section 13981. This Act did not become effective until September 13, 1994, almost two years after the conduct giving rise to the instant lawsuit. Although the Act does not specifically indicate that its provisions should not be applied retroactively, the

---

8. Judge Turgeon files a dissenting opinion to this ruling.

Pennsylvania Rules of Statutory Construction provide that "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the general assembly." 1 Pa.C.S. §1926. Since the language of the Act does not state that its provisions should have a retroactive effect, the demurrer filed against Count VII is sustained and that count dismissed.

## B. *Preliminary Objections of Defendants of the Diocese*

In Count VIII of the complaint, plaintiff avers that defendants, the Diocese of Harrisburg and the Church of the Good Shepherd, are vicariously liable through the doctrine of *respondeat superior* for the actions of Peregrin. It is well established in Pennsylvania law that a principal may be held vicariously liable for the actions of its agent.

"[A] principal is liable to innocent third parties for the frauds, deceits, concealments, misrepresentations, torts, negligences and other malfeasances or misfeasances of his agent committed in the course of his employment, although the principal did not authorize, justify or participate in, or indeed know of, such misconduct, or even if he forbade the acts or disapproved of them." *Solomon v. Gibson,* 419 Pa. Super. 284, 293, 615 A.2d 367, 371 (1992), citing *Aiello v. Ed Saxe Real Estate Inc.,* 508 Pa. 553, 559, 499 A.2d 282, 285 (1985).

The rule imposing vicarious liability is based upon grounds of public policy. In a situation where one of two innocent persons must suffer from a third person's wrongdoing, it is more reasonable for the principal to suffer, rather than an innocent stranger, since the principal placed the agent in the position of trust and confidence. *Solomon, supra.* However, in cases where the

"agent acts in his own interest which is antagonistic to that of his principal, or commits a fraud for his own benefit in a manner which is beyond the scope of his actual or apparent authority or employment, the principal who has received no benefit therefrom will not be liable for the agent's tortious act." *Solomon, supra* at 293-94, 615 A.2d at 372, citing *Todd v. Skelly,* 384 Pa. 423, 429, 120 A.2d 906, 909 (1956).

Therefore, in order to hold the Diocese of Harrisburg and the Good Shepherd Church liable for the conduct of Peregrin, it must be determined whether Peregrin committed the sexual acts within the scope of his employment. Conduct shall be considered within the scope of one's employment if: "(1) it is of a kind and nature that the employee is employed to perform;

"(2) it occurs substantially within the authorized time and space limits;

"(3) it is actuated, at least in part, by a purpose to serve the employer; and

"(4) if force is intentionally used by the employee against another, it is not unexpected by the employer." Restatement (Second) of Agency §228; *Natt v. Labar,* 117 Pa. Commw. 207, 543 A.2d 223 (1988).

In light of the above factors, it appears to this court that Peregrin's conduct arguably falls within the scope of his employment. Initially, Peregrin was called upon to perform parochial duties related to the death of plaintiff's mother. Peregrin extended these duties by counseling plaintiff to enable her to cope with her mother's death and also to facilitate her return to the Catholic church. Conduct of this kind and nature may be construed as that type of conduct which Peregrin was employed to perform. Additionally, the acts substantially occurred within authorized time and space limits since the counseling sessions were held on church property

during regular hours. Finally, Peregrin acted in part, to serve his employer by facilitating plaintiff's return to the Catholic church. Based on these facts, Peregrin's conduct may be considered within the scope of his priestly duties, thereby making the Diocese of Harrisburg and the Good Shepherd Church vicariously liable for any misconduct committed during the counseling sessions. Since plaintiff has established she may recover under vicarious liability, the preliminary objection to Count VIII of the complaint is denied.

In Counts IX and X of the complaint, plaintiff alleges that defendants of the diocese are liable for the negligent hiring, supervision and retention of Peregrin. Plaintiff must establish the elements of section 213 of the Restatement (Second) of Agency to prevail on these claims. Section 213 provides as follows:

"A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

"(a) in giving improper or ambiguous orders or in failing to make proper regulations; or

"(b) in the employment of improper persons or instrumentalities in work involving risk of harm to others;

"(c) in the supervision of the activity; or

"(d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control." *Dempsey v. Walso Bureau Inc.,* 431 Pa. 562, 246 A.2d 418 (1968) (adopting section 213 as law in Pennsylvania). See also, *Destafano, supra.*

In Count IX, plaintiff avers that defendants of the diocese are liable for the negligent hiring of Peregrin since he was an agent/subagent and/or employee of these defendants. She contends that these defendants

were negligent in deciding to hire Peregrin since they knew or had reason to know of certain qualities possessed by him which displayed his propensity to harm parishioners or counselees. The duty owed to plaintiff was breached when these defendants chose to extend Peregrin the opportunity to serve as a priest in the Good Shepherd parish. As a result of the breach, plaintiff suffered physical and mental injuries as previously described herein.

Similarly, in Count X, plaintiff alleges that Peregrin was an agent/subagent or employee of defendants of the diocese. She contends that these defendants owed a duty to her which was breached by their failure to adequately supervise Peregrin and discipline him for his sexual conduct towards parishioners and counselees. Despite their knowledge of Peregrin's activities, these defendants allowed him to continue performing his priestly duties and eventually cause harm to plaintiff.

Based on the foregoing allegations, plaintiff has adequately averred sufficient facts to sustain causes of action for negligent hiring, supervision and retention. The preliminary objections to Counts IX and X are denied.

By way of further support, the courts have also relied on section 317 of the Restatement (Second) of Torts to sustain a claim for negligent supervision when the acts committed by the servant clearly do not fall within the scope of his employment. *Moses v. Diocese of Colorado,* 863 P.2d 310 (Colo. 1993); *Dempsey, supra; Smith v. Bethany,* 48 D.&C.3d 359 (1988); section 317 provides that:

"A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting him-

self as to create an unreasonable risk of bodily harm to them, if

"(a) the servant

"(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

"(ii) is using a chattel of the master, and

"(b) the master

"(i) knows or has reason to know that he has the ability to control his servant, and

"(ii) knows or should know of the necessity and opportunity for exercising such control."

In the case at hand, plaintiff has also established a claim for negligent supervision under a tort theory of liability. She has sufficiently pleaded that Peregrin committed the sexual acts on the property of the church. Furthermore, she contends that defendants of the diocese had the ability to control Peregrin's actions and knew or had reason to know of the necessity and opportunity to exercise such control.

### C. *Consolidated Preliminary Objections of Defendant Peregrin and Defendants of the Diocese*

In Counts III and XI, plaintiff alleges a cause of action for breach of fiduciary duty against Peregrin and the defendants of the diocese. Defendants argue that a claim for breach of fiduciary duty is another method of asserting a claim for clergy malpractice. However, we believe there is sufficient authority to persuade this court into treating these legal theories as two separate and distinct causes of action. *Moses, supra; Destafano, supra; Podolinski, supra.* The difference between these legal theories can readily be discerned by examining the elements of each. A breach of fiduciary duty is, in essence, a breach of trust which does not require a professional relationship or a professional standard of care. Whereas, an action for clergy mal-

practice is a claim of negligence based on a professional relationship and standard of care. *Destafano, supra.*

A fiduciary relationship is a prerequisite to a finding of a fiduciary duty. "A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Moses, supra* at 321, citing Restatement (Second) of Torts §874, cmt. a (1979). A relationship of blood, business, friendship or association may give rise to a fiduciary relationship. *Moses, supra* at 321-22. Specifically, the Pennsylvania Supreme Court has held that a fiduciary or confidential relationship exists "whenever one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side, or weakness, dependence or justifiable trust, on the other." *In re Estate of Clark,* 467 Pa. 628, 635, 359 A.2d 777, 781 (1976).

Plaintiff alleges that Peregrin owed a duty to her, as her counselor and priest, to act primarily for her benefit. In this role, she contends he was required to exercise the utmost good faith solely to benefit her needs. She claims he had a further duty to act with reasonable skill, care, loyalty and impartiality in counseling her. By acting in a manner to satisfy his own sexual needs, plaintiff alleges that Peregrin breached his fiduciary duty to her.

Additionally, in Count XI, plaintiff contends that defendants of the diocese breached their fiduciary duty by placing Peregrin in a position to serve as her counselor, knowing of her vulnerability and Peregrin's past sexual misconduct. She specifically describes the actions of these defendants, which comprise the long-standing practice of ignoring priestly sexual misconduct with counselees.

Since the law recognizes the above-described duties as those being owed by a fiduciary, plaintiff has sufficiently established facts to support a claim for breach of a fiduciary relationship. *Destafano, supra* at 284. Accordingly, the preliminary objections to Count III and Count XI of the complaint are denied.

In Counts V and XII, plaintiff sets forth a claim for intentional infliction of emotional distress. Pennsylvania appellate courts have not been consistent in recognizing this particular cause of action. However, if the courts were to adopt section 46 of the Restatement (Second) of Torts, plaintiff must show that the defendants, by extreme and outrageous conduct, intentionally or recklessly caused her to suffer severe emotional distress and resulting bodily harm. *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 527 A.2d 988 (1987). The conduct must be "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and . . . regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 195, 527 A.2d at 994, citing section 46, Restatement (Second) of Torts, cmt. d. This court finds that plaintiff has met this burden. Therefore, Counts V and XII shall survive the demurrer.

Finally, plaintiff, Frank Nardella, has filed a claim for loss of consortium against Peregrin, Father Richardson, Father Helwig and Bishop Dattilo. A claim for loss of consortium is derivative in nature and may be maintained since plaintiff has raised viable claims against the above-named defendants. *City of Philadelphia v. Buck,* 138 Pa. Commw. 250, 256 n.6, 587 A.2d 875, 879 n.6 (1991). Contrary to defendants' assertions, Mr. Nardella has not set forth a claim for alienation of affections. 23 Pa.C.S. §1901. Instead, his recovery is being sought in a derivative capacity, which is completely proper under the circumstances of this action.

Turgeon, J., files a dissenting opinion as to Count IV.

## ORDER

And now, March 21, 1997, in connection with the attached opinion, it is hereby ordered that the preliminary objections to Counts VI and VII are granted. Whereas, the preliminary objections to Counts I, II, III, IV, V, VIII, IX, X, XI, XII, and XIII are denied.

Furthermore, the ruling on these objections involves controlling questions of law as to which there is substantial ground for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of the matter. As such, this action may be immediately appealed to the Pennsylvania Superior Court. Pa.R.A.P. 312, 1311; 42 Pa.C.S. §702(b).

## DISSENTING OPINION

TURGEON, *J.,* March 21, 1997—I dissent to that portion of the panel's opinion which has dismissed plaintiff's claim against defendant Peregrin for clergy malpractice. The majority is correctly concerned that establishing a standard of care in clergy malpractice claims may impermissibly entangle the courts in religious matters. However, at this stage of the pleadings, under the facts as alleged in this case, such concerns are unwarranted. Accordingly, I would overrule the demurrer.

I find persuasive the reasoning set forth by a New Jersey appellate court in a similar case. *F.G. v. MacDonnell,* 677 A.2d 258 (N.J.Super.A.D. 1996), *appeal granted,* 683 A.2d 1159 (1996). In *MacDonnell,* the court upheld a clergy malpractice action asserted against an Episcopalian rector for exploiting his counselee's

emotional vulnerabilities and inducing her to engage in sexual acts with him. The court stated as follows:

"We conclude that one test to determine whether a cause of action against a cleric is cognizable in civil court is whether adjudication of the claim requires an evaluation of dogma or ritual, or other matters of purely ecclesiastical concern. In the present case, it is unlikely that defendants will assert that sex with a counselee by a pastoral counselor is sanctioned by or somehow involves tenets of the Episcopalian church, or would otherwise create an entanglement with religious beliefs or rituals of First Amendment concern. (citations omitted)

"Moreover, there is a bright line between counseling culminating in a sexual relationship with a counselee and other types of harms allegedly resulting from a failed counseling relationship." *Id.* at 263.

The court perceived "no impenetrable barrier, on the limited record before [it], to establishing a standard of care applicable to cleric-counselors in the context of an allegation that the counselor used his position to sexually exploit the counselee." *Id.* at 264.

Similarly, it is unlikely that defendant Peregrin will assert that sex with a counselee is sanctioned by or somehow involves tenets of the Catholic church, or would otherwise create an entanglement with religious dogma or rituals of purely ecclesiastical concern which will implicate the First Amendment. Accordingly, I would overrule the demurrer to clergy malpractice in Count VI of the complaint.