# New Castle Industries Inc. v. Behm

C.P. of Lawrence County, no. 40219 of 1996, EQ.

*Arthur J. Schwab* and *Stanley J. Parker,* for plaintiff. *Michael J. Betts* and *Charles W. Garbett,* for defendants.

PRATT, *J.,* December 23, 1998—The underlying dispute between the plaintiff and the defendants arises out of the defendants' access to certain confidential information of the plaintiff. Defendant Jay Behm was employed by plaintiff as a sales engineer, from June 15, 1992 until his voluntary resignation on October 2, 1995. During his employment, defendant Jay Behm made sales calls on existing and potential customers to solicit orders and promote the products of the plaintiff. Defendant Jennifer B. Behm began working for the plaintiff, on an independent contractor basis, as a computer consultant on August 6, 1992 and ended her relationship on July 21, 1995. Both defendants had possession of, or access to, various trade secrets and customer information, which was the confidential property of plaintiff.

## PROCEDURAL HISTORY

The plaintiff initiated its cause of action by a complaint in equity on June 13, 1996, seeking to enjoin

the defendants from the unlawful conversion and misuse of the plaintiff's trade secrets and other confidential information and defendants' tortious interference with the plaintiff's existing and prospective business relations and unfair competition; and, seeking relief from a civil conspiracy to commit these acts. The plaintiff also sought replevin relief regarding its confidential customer and trade secret information which was in the defendants' possession. Simultaneously with the filing of its complaint, and in response to a motion by plaintiff, entitled "motion for order of court directing preservation of documents, software and things by defendants" (motion to preserve), but without notice to defendants, the court entered an order, dated June 13, 1996. The order directed that the defendants preserve, maintain, and protect in their present state from destruction, modification or alteration, each and any of the documents, software and things described in plaintiff's "request for production of documents, software and things," previously served upon the defendants, which were in the possession, custody or control of the defendants, pending disposition of the plaintiff's complaint in equity. The court further ordered that it would conduct a hearing of the motion to preserve at the same time of the hearing of plaintiff's motion for expedited discovery, scheduled for June 21, 1996. On June 13, 1996, the defendants were properly served with plaintiff's complaint and various other pleadings, as well as the plaintiff's motion to preserve and ensuing order of court, dated June 13, 1996.

On June 21, 1996, as scheduled, the court heard arguments of the plaintiff's motion for expedited discovery and, by appropriate order, established a discovery schedule, which included inspection and examination of the defendants' computers, hardware and software,

by Price Waterhouse on behalf of the plaintiff. Following the inspection on June 24, 1996, and the taking of the depositions of the defendants on June 27, 1996, the plaintiff filed its "motion for discovery sanctions and petition for adjudication of civil contempt for violation of order directing preservation of documents, software and things" (motion for sanctions and contempt), alleging that the defendants violated the court's June 13, 1996 order by deleting the subject files from their computer after they were appropriately served with notice of the court's order of June 13, 1996.

Subsequent to a full evidentiary hearing on May 23, 1997, the court issued an order on December 30, 1997, granting the plaintiff's motion for sanctions and contempt, and adjudicating the defendants in indirect civil contempt of court. The court found that the defendants had intentionally and willfully violated the court's June 13, 1996 order by deleting files from their computer's memory containing the plaintiff's confidential business information and discarding a "hard copy" thereof printed from the defendants' computer's memory. As discovery sanctions, the court ordered the defendants to pay the plaintiff a fine of $50,000. Plaintiff's costs, and reasonable attorney's and expert fees incurred by the plaintiff, due to the defendants' noncompliance with the court's order of June 13, 1996, were also imposed.

On January 27, 1998, the court granted defendants' motion to stay time for appeal and stayed the time for appeal of the court's contempt order of December 30, 1997, until such time as the court could dispose of defendants' objections to the amount plaintiff claimed for attorney's and expert fees and costs.

After a hearing, the court, by its June 23, 1998 order, awarded the plaintiff $25,000 as reasonable attorney's

and expert fees and costs generated by the plaintiff in prosecuting its motion for sanctions and contempt. The defendants, thereafter, filed a timely notice of appeal from this court's December 30, 1997 and June 23, 1998 orders and a concise statement of matters complained of on appeal. This opinion is issued in satisfaction of Pa.R.A.P. 1925(a).

## DISCUSSION

The court will first address those objectives raised by defendants regarding the court's contempt order of December 30, 1997, and then those issues relevant to the court's order of June 23, 1998, awarding plaintiff reasonable attorney's and expert fees, and costs.

## I.

### Civil Contempt

The purpose of a proceeding for indirect civil contempt is remedial, and sanctions may be imposed to either coerce the defendant into compliance or compensate the complainant for losses sustained as a result of the defendant's actions. *Township of South Fayette v. The Boys' Home,* 31 Pa. Commw. 254, 263, 376 A.2d 663, 667 (1977). In determining whether to adjudicate a defendant in indirect civil contempt, the court need only resolve whether the defendant, with prior notice, intentionally and willfully violated an order of the court. *East Caln Township v. Carter,* 440 Pa. 607, 611, 269 A.2d 703, 705 (1970). It is under the umbrella of this standard that this court, in the instant case, must review the defendants' objections regarding the court's December 30, 1997 order adjudicating defendants in indirect civil contempt of court.

## A.

The defendants assert that paragraph 3 of the court's December 30, 1997 contempt order was erroneous, as the court should have granted the defendants' oral motion in the nature of an involuntary compulsory nonsuit (motion for compulsory nonsuit) at the close of the plaintiff's case. The standard of review for the entry of a compulsory nonsuit is well settled:

"[A compulsory nonsuit] is proper only if the fact-finder, viewing all of the evidence in favor of the plaintiff could not reasonably conclude that the essential elements of a cause of action have been established. When a nonsuit is entered, the lack of evidence to sustain the action must be so clear that it admits no room for fair and reasonable disagreement. A compulsory nonsuit can only be granted in cases where it is clear that a cause of action has not been established and the plaintiff must be given the benefit of all favorable evidence along with all reasonable inferences of fact arising from the evidence, resolving any conflict in favor of the plaintiff. The fact-finder, however, cannot be permitted to reach a decision on the basis of speculation or conjecture." *Shannon v. McNulty,* 718 A.2d 828, 829-30 (Pa. Super. 1998). See also, *Smith v. Grab,* 705 A.2d 894 (Pa. Super. 1997); *Joyce v. Boulevard Physical Therapy and Rehabilitation Center,* 694 A.2d 648 (Pa. Super. 1997); *Bridle v. West Allegheny Hospital,* 406 Pa. Super. 572, 594 A.2d 766 (1991).

In the instant case, it would have been error for the court to grant the defendants' motion for compulsory nonsuit at the close of the plaintiff's case in view of the evidence presented by plaintiff.

First, the plaintiff presented credible expert testimony from witness Lawrence Ranallo, a partner at Price Wa-

terhouse. After being qualified as an expert in the areas of corporate financial recovery and corporate finance, Ranallo testified that he was retained by the plaintiff to inspect the defendants' computers in preparation for the present litigation. Notes of testimony, May 23, 1997, p. 7. He revealed that 16 files had been deleted from the defendants' computer, of which 10 were retrieved in readable form; six of the files were permanently lost. N.T. May 23, 1997, pp. 32-33. Ranallo also stated that he examined the readable files, and they contained information belonging to the plaintiff, such as customer lists, addresses, and technical information that described products and specific applications associated with the customers listed. N.T. May 23, 1997, p. 33. Printed copies of the retrieved files were admitted as plaintiff's exhibits 6 through 13. N.T. May 23, 1997, p. 36.

Next, the plaintiff introduced the deposition testimony of defendant Jennifer B. Behm. Her testimony showed that the data contained in plaintiff's exhibits 6 through 13 were typed into defendants' computer by Judy Brooks, defendant Jennifer B. Behm's mother. N.T. May 23, 1997, p. 76. Defendant Jennifer B. Behm further stated that she assisted defendant Jay Behm, her husband, in deleting the data from their computer on June 13, 1996, the day they were served notice of this court's June 13, 1996 order, directing them to preserve any information associated with this lawsuit. N.T. May 23, 1997, p. 78. The plaintiff also introduced an affidavit of defendant Jay Behm, wherein Behm stated he destroyed a printout of the data deleted from the computer. N.T. May 23, 1997, p. 82.

Finally, the plaintiff introduced the testimony of James D. Frankland Jr., president of plaintiff New Castle Industries Inc. Frankland testified that the information retrieved by Price Waterhouse from the defendants' com-

puter for the purposes of this litigation contained customer order and job numbers from New Castle Industries' Gold Mine database program. N.T. May 23, 1997, p. 125. Frankland further states that there were hundreds of examples of information specific to New Castle Industries contained in the retrieved data and that the defendants were not authorized to possess this information. N.T. May 23, 1997, pp. 129-30.

Clearly, if this evidence is accepted as true and viewed in a light favorable to the plaintiff, together with all reasonable inferences to be drawn therefrom, it must be concluded that the essential elements for indirect civil contempt were established. By this court's June 13, 1996 order, the defendants were directed to preserve and maintain certain documents, software and things, which were in their possession and control pending final disposition of plaintiff's cause of action. If the testimony of Ranallo, the depositions of the defendants, defendant Jay Behm's affidavit, and the testimony of Frankland are accepted as true, then the evidence shows that defendants intentionally and willfully deleted files from their computer memory containing the plaintiff's business information in direct contravention of this court's order of June 13, 1996. Therefore, with the plaintiff establishing the essential elements of indirect civil contempt, denying defendants' motion for compulsory nonsuit was proper.

## B.

The defendants also complain that there was insufficient evidence to support the court's findings in paragraph 4 of its contempt order of December 30, 1997, regarding whether the defendants intentionally and willfully violated this court's June 13, 1996 order. Additionally, the defendants complain that the court's ad-

judication of the defendants in indirect civil contempt in paragraph 5 of its December 30, 1997 order was not supported by the evidence to satisfy the elements of indirect civil contempt.

It is the exclusive province of the fact-finder to determine the credibility of witnesses and the weight to be given to testimony and other evidence. *Keating v. Belcher,* 384 Pa. 129, 132, 119 A.2d 535, 537 (1956). In order for the fact-finder's verdict to be against the weight of the evidence, it must be so contrary to the evidence as to shock one's sense of justice. *Ditz v. Marshall,* 259 Pa. Super. 31, 35, 393 A.2d 701, 703 (1978). Certainly, if the court in this case accepted as true the testimony and evidence presented by the plaintiff, as discussed above in conjunction with the defendants' motion for compulsory nonsuit, the court could reasonably find the defendants in indirect civil contempt, as the adjudication was amply supported by sufficient evidence.

## II.

### Discovery Sanctions

The imposition of discovery sanctions is largely within the discretion of the trial court, and the court is required to select a punishment which "fits the crime." *Brunetti v. SEPTA,* 329 Pa. Super. 477, 481, 478 A.2d 889, 891 (1984). The appropriateness of sanctions is determined by the assessment of four factors: "(1) the prejudice caused to the opposing party and whether the prejudice can be cured; (2) the defaulting party's willfulness or bad faith in failing to comply with the discovery order; (3) the number of discovery violations; and (4) the importance of the precluded evidence in

light of the failure." *Hein v. Hein,* 717 A.2d 1053, 1056 (Pa. Super. 1998).

The defendants argue that there was insufficient basis to support the court's award of discovery sanctions in paragraph 6 of its December 30, 1997 order, there was no legal basis for discovery sanctions, and that the amount of the sanctions was improper and not supported by the evidence or law.

In analyzing the imposition of sanctions in this case, the court first must decide the extent of the prejudice to the plaintiff and whether this can be cured. By deliberately destroying materials vital to the plaintiff's cause of action, the defendants placed beyond the reach of the plaintiff a substantial amount of evidence that was critical and relevant to proving the averments of the plaintiff's complaint. As indicated above, in discussing Ranallo's testimony, there were six computer files that could not be retrieved by the plaintiff's expert. This evidence has been forever lost, and this prejudice to the plaintiff cannot be cured. The court finds that the actions of the defendants precipitated the plaintiff's withdrawal of its substantive claims against the defendants.

Secondly, the court must examine the defaulting party's willfulness or bad faith in failing to comply with the discovery order. As reviewed above, the testimony established that the defendants intentionally and willfully deleted the information from their computer the day they were served with notice of the court's order to protect and preserve the information related to the litigation. There can be no behavior so brazen and deliberate as these actions.

Lastly, the court must consider the number of discovery violations and the importance of the precluded evidence in determining whether sanctions were ap-

propriate. The number of violations is not so determinative in this case as the importance of the precluded evidence. The destruction of the evidence in violation of this court's order seriously and irreparably damaged the plaintiff's case against the defendants, to the extent that plaintiff eventually withdrew its substantive claims in their lawsuit.

After accessing the appropriate factors and the court's determinations that the defendants must be held accountable for their actions and that the plaintiff must be compensated for its loss of a viable cause of action, the sanctions imposed against the defendants were reasonable and proper. The severity and irreparable nature of the defendants' actions led to the imposition of sanctions in the amount of $50,000, as well as reasonable expert and attorney's fees and costs. The court believes this is a just and reasonable result in consideration of the defendants' egregious conduct.

### III.

### Attorney's and Expert Fees and Costs

An award of attorney's fees, expert fees, and costs is a matter within the discretion of the trial court and will not be reversed where the conduct of a party during the pendency of a matter is dilatory, obdurate, or vexatious. *American Mutual Liability Insurance Co. v. Zion & Klein P.A.,* 339 Pa. Super. 475, 477, 489 A.2d 259, 260 (1985). The defendants here contend that there was no competent evidence presented to the court to support the award or amount of attorney's fees as set forth in paragraph 2 of the court's order of June 23, 1998. Certainly, the testimony and other evidence discussed in reference to the defendants' other contentions warranted the award of discovery sanctions and attor-

ney's and expert fees, and costs in consideration of the defendants' scandalous and deviant conduct. The court conducted a full hearing to consider the amount and reasonableness of the attorney's fees, expert fees, and costs on March 31, 1998. The plaintiff introduced documented evidence and testimony as to the specific amounts of the fees and costs. Thereafter, the court awarded the plaintiff the sum of $25,000, which was a substantial reduction from the amount requested by the plaintiff. Therefore, the defendants' contention that the award of these fees and costs was not proper or unsupported has no merit.

## IV.

The defendants' final two assignments of error are baffling to the court. Initially, the defendants contend that the court's orders of December 30, 1997 and June 23, 1998 were without legal foundation, given plaintiff's withdrawal of all of its substantive claims in its complaint and the showing that none of the information in defendants' possession was legally protectable. The withdrawal of plaintiff's underlying substantive claims was directly related to the destruction of the relevant evidence by the defendants, and whether the plaintiff would have prevailed on the claims concerning the protectability of this information is irrelevant to determining whether the defendants intentionally and willfully violated an order of this court and, therefore, should be held in contempt. Thus, this argument is rejected.

The defendants' final contention is that the court's orders of December 30, 1997 and June 23, 1998 imposed fines upon the defendants without affording the procedural safeguards to which they are entitled under the legal standards for adjudicating contempt, the criminal law and the United States and Pennsylvania con-

stitutions. The defendants give no further elaboration on this statement, so the court can only surmise its meaning.

The legal standard for adjudicating indirect civil contempt, as discussed at length herein, has been satisfied. The criminal law has no application to this matter, as it was an action for civil contempt, not criminal contempt. The court can only infer that the procedural safeguards to which the defendants refer under the United States and Pennsylvania constitutions are included in the broad doctrine of procedural due process. Procedural due process is a flexible concept requiring individual protections to be determined on a case-by-case basis; however, the essential requisites are notice and a meaningful opportunity to be heard. See *PennDOT v. Clayton,* 546 Pa. 342, 684 A.2d 1060 (1996); *Fiore v. Commonwealth, Board of Finance and Revenue,* 534 Pa. 511, 633 A.2d 1111 (1993); *Soja v. Pennsylvania State Police,* 500 Pa. 188, 455 A.2d 613 (1982). The defendants in this case were certainly provided adequate and proper notice and a meaningful opportunity to be heard. The court held two hearings of these matters, and the defendants were presented with ample opportunity to present their case. Defendants' final contention is, consequently, wholly groundless.

For all the foregoing reasons, this court concludes that its orders of December 30, 1997 and June 23, 1998 were proper and should be affirmed.

## ORDER

The court directs that the attached opinion shall be filed of record, and the prothonotary is directed to transmit the complete record to the Superior Court forthwith.